Martha NATHAN, et al., Plaintiffs,

v.

ATTORNEY GENERAL OF the UNITED
STATES, Defendant.

Civ. A. No. 82–2716.

United States District Court,
District of Columbia.

Feb. 23, 1983.

Daniel P. Sheehan, P. Lewis Pitts, Washington, D.C., for plaintiffs.

Judith F. Ledbetter, Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM

GESELL, District Judge.

This case presents an issue of first impression. The Court is called on to determine whether or not the Ethics in Government Act of 1978, 28 U.S.C. § 591, *et seq.*, contemplates that the Attorney General's refusal to investigate specific information of suspected criminal conduct by high federal officials covered by the Act may be reviewed by a United States District Judge on the application of persons supplying such information. The Court holds that plaintiffs have standing to invoke procedures mandated by the Act and that the Court has jurisdiction to enforce those procedures. Accordingly, the Attorney General's motion to dismiss plaintiffs' complaint must be denied.

This action is brought on behalf of individuals killed or wounded at Greensboro, North Carolina, in 1979 while conducting an

authorized parade in that city. Members of the Ku Klux Klan and American Nazi Party made an armed terrorist attack upon parading blacks and members of the Communist Workers' Party. Plaintiffs claimed in information provided to the Attorney General on March 24, 1982, that high officials of the United States Government authorized or negligently permitted the gross violation of civil rights which occurred and that those officials have conspired to conceal their involvement. Invoking the Ethics in Government Act, plaintiffs asked the Attorney General to investigate those charges and to report to the Special Prosecutors Division of the United States Court of Appeals created under that Act. The Attorney General, claiming lack of information, failed to conduct even a preliminary investigation and he consequently filed no report with the Special Division. This suit sounding in mandamus followed to force the Attorney General to carry out his statutory duties under the Act.

Plaintiffs assert that they furnished the Attorney General with specific information, that he was required under the Act to investigate, and that having failed to do so he must now under express provision of the Act apply to the Special Division for appointment of a Special Prosecutor. The Attorney General has moved to dismiss, claiming that he had no duty to investigate or report and that, in any event, plaintiffs lack standing to force him through this Court to perform any such statutory duty.

During the time plaintiffs provided information to the Attorney General and filed this action, section 592(a) of 28 U.S.C. provided that upon receipt of "specific information" that a high-level executive official has committed a federal criminal offense, the Attorney General "shall conduct, for a period not to exceed ninety days, such preliminary investigation of the matter as the Attorney General deems appropriate."[1] Following the ninety-day investigation period the Attorney General must take one of

two actions, depending upon the result of the investigation. Section 592(b)(1) provides:

> If the Attorney General, upon completion of the preliminary investigation, finds that the matter is so unsubstantiated that no further investigation or prosecution is warranted, the Attorney General shall so notify the division of the court . . . and the division of the court shall have no power to appoint a special prosecutor.

Section 592(c)(1) provides:

> If the Attorney General, upon completion of the preliminary investigation, finds that the matter warrants further investigation or prosecution, or if ninety days elapse from the receipt of the information without a determination by the Attorney General that the matter is so unsubstantiated as not to warrant further investigation or prosecution, then the Attorney General shall apply to the division of the court for the appointment of a special prosecutor.

The Attorney General admittedly neither investigated nor reported to the Special Division of the Court. There is no doubt the Nazi/Klan attack on the parade actually took place. Nor can it be claimed at this juncture that no violation of a federal criminal statute may have occurred. However, section 592 of 5 U.S.C. only applies to certain government officials. At issue here is the degree of governmental involvement at a high level in this atrocious example of anti-civil rights violence. Accordingly, it remains to be determined whether or not the Attorney General received from plaintiffs specific information which would trigger the Act into operation.

The complaint alleges that specific information as to officials covered by the Act was supplied, and this assertion is documented. Against a motion to dismiss, those allegations alone are sufficient, particularly where there appears to be substance to the assertion. Among other facts claimed it

---

1. This section of the Act was subsequently amended on January 3, 1983, by Pub.L. 97–409, 96 Stat. 2039. *See* note 4, *infra.*

appears that an agent of the Federal Bureau of Alcohol, Tobacco and Firearms was participating in the Nazi activities at Greensboro at the time. An FBI informer also helped organize the attack and actually participated in it. He was in touch with the FBI concerning the attack and the FBI had circulated among the community photos of Communist Workers' Party leaders likely to parade. Some of those photographed were shot. The Bureau was coordinating its activities with the Greensboro Police, who allegedly knew when the attack was to take place but remained absent, allowing the two unpopular groups to fight it out. The exact role of the FBI in the Greensboro events is obscure but the unusual involvement of its agents with the informer is outlined. Moreover, plaintiffs undertook numerous efforts through private litigation and otherwise to ascertain what high government officials knew of these and related facts and they allege their efforts have been thwarted.

Plaintiffs assert, without concrete facts, that under all those circumstances the Attorney General or one or more of his predecessors, the Director of the FBI, as well as others in high places, knew or should have known what was to occur and consciously allowed it to happen. They further allege that those officials have attempted to "cover up" federal involvement at Greensboro.

■ Contrary to defendant's claims, the information submitted to the Attorney General appears sufficiently specific to require investigation. Congress recognized that more than wild rumor was needed to trigger the Act but Congress was careful to note that investigation should proceed if the information was sufficiently pointed to focus the direction of the inquiry. That

test is amply met in this instance. It would be unreasonable to require more than the submission of data creating a reasonable basis for inquiry and this was provided in the present case.[2]

Since plaintiffs claim they have furnished sufficient information to initiate the statutory procedures, the following question is presented. Did Congress intend the federal courts to have jurisdiction to enforce the Act and do plaintiffs have standing to invoke this Court's aid?

The Act is not explicit in defining the role of the federal courts. During the legislative process there was considerable debate on that subject. Responsible groups urged that there be a specific provision assuring private enforcement and indeed some earlier versions of the bill were to this effect. See H.R. 14476, 94th Cong., 2d Sess. (1976). Others urged that there be little or no judicial involvement and legislative proposals to that purpose were also prepared. See Public Officials Integrity Act of 1977, Hearings on S. 555 before the Senate Committee on Governmental Affairs, 95th Cong., 1st Sess. 22 (1977) (Statement of John Harmon). Those anxious to give the Act force and effect pointed out that without some private right of action the Act would be a meaningless gesture. Id. at 39, 41 (Statements of Livingston Hall and Herbert S. Miller).

As finally enacted, the Act provided only that once the Attorney General applies to the Special Division for appointment of a Special Prosecutor that determination cannot be judicially reviewed. 28 U.S.C. § 592(f). The Act says nothing else as to how the Act in other respects shall be made effective.[3] That single, limited restriction

---

**2.** The legislative history of the Act states that a letter saying that a member of the President's Cabinet is a "crook," with no further information or factual support regarding the alleged criminal activity, is not enough to qualify as specific information. However, if someone says that a Cabinet member took a bribe in New Orleans on July 1, 1976, that apparently is "specific" enough to require a preliminary investigation. S.Rep. 95–170, 95th Cong., 1st Sess. 52, 54–55 (1977), U.S.Code Cong. & Ad-

min.News 1978, p. 4216. Plaintiffs similarly have alleged civil rights violations by particular officials, during a particular time period, revolving around an event described in far greater detail than the allegation found sufficient in the legislative history.

**3.** Section 596(a)(3) of Title 28 provides that a Special Prosecutor removed by the Attorney General may seek judicial review before the Division of the Court which appointed him.

on court involvement suggests that Congress did not intend to foreclose judicial review in other appropriate circumstances where it is demonstrated to the court's satisfaction that the Attorney General has failed to carry out a specific duty mandated under the Act.

Such an interpretation is also necessary to ensure the Ethics in Government Act has meaning at all. If not plaintiffs, who can be said to have a cause of action to insist that the Act be carried out in accordance with its terms? The Special Division of the Court responsible for appointing Special Prosecutors, to which this matter was initially presented, has ruled it has no jurisdiction. Order 82–3, United States Court of Appeals for the District of Columbia, Special Prosecutors Division, September 13, 1982. Nor does Congress have any special enforcement power; under the Act members of the Judiciary Committees of the House or Senate can only request appointment of a Special Prosecutor, and, in any event, if an Attorney General ignores his duty to investigate and report to Congress, Congress remains uninformed and cannot act. Thus if the Act is enforceable at all it must be through those, like plaintiffs here, who have supplied specific information and pursue their application for an investigation in the District Court.

█ Standing should be allowed only to permit adjudication of genuine controversies. While the law of standing remains on a zigzag course, the rules of standing must be applied with due regard for the congressional purpose underlying the Act and the obvious need at a minimum to assure compliance with procedures mandated by the legislation. Plaintiffs are victims of the alleged crime. Theirs is far more than a generalized grievance. They sought investigation under the Act, they provided information, the Attorney General failed to act. The controversy is concrete. No separation of powers question or matter of prudential concern is involved. The fact that plaintiffs' constitutional rights under the First Amendment are at the core of the controversy enhances the need for providing some relief. As the Court of Appeals for this Circuit recently stated, there is a

> well-established rule that when the Constitution or a statute confers procedural rights on certain persons, those persons have standing to insist that the government follow proper procedures in reaching a substantive decision, even without any showing that following different procedures would have affected the final outcome.

*Covelo Indian Community v. Watt,* No. 82–2417 (D.C.Cir., Dec. 31, 1982) (slip at 22, 23), *vacated as moot,* (Feb. 1, 1983).

Standing will be granted to plaintiffs to challenge the Attorney General for failing to report to the Special Division after receiving the information plaintiffs provided.[4]

The Attorney General is concerned that the Act may intrude unduly upon his office by forcing appointment of a Special Prose-

---

That provision seems geared toward ensuring that judicial review takes place before the Division, rather than providing that judicial review is available at all.

4. The Attorney General urges that the Court has no authority to review his actions because his discretion under the Act has been recognized by 1983 amendments to the Act. Pub.L. 97–409, 96 Stat. 2039 (Jan. 3, 1983). The pertinent amendments do suggest that the Attorney General now has some degree of discretion in that he is free to determine whether or not the specific information received "is sufficient to constitute grounds to investigate" by considering *both* the degree of specificity and the credibility of the source. But this provision does not permit the Attorney General to adopt a definition of "specific information" different from the standard originally set by Congress. As the legislative history of the amendment indicates, the specificity standard remains unchanged and no issue as to credibility is apparent in this case. S.Rep. 97–496, 97th Cong., 2d Sess. 12 (1982). Moreover, it is not clear that the amended law should be applied where plaintiffs first supplied information to the Attorney General nearly a year before the amendments were passed. *Bradley v. School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). Finally, whatever may be the Attorney General's discretion generally, under either version of the Act surely its exercise is narrowly confined where it comes into play respecting his own conduct or that of immediate aides.

cutor[5] to take over his constitutional functions. In this regard, however, he misinterprets the effect of the Act. Where specific information is provided, the Act requires only preliminary investigation; it does not oblige the Attorney General to seek an outside prosecutor. To be sure he must report the results of his investigation to the Special Division. But his report need not be public and whatever his investigation discloses he may still decide not to prosecute. Thus the Act has built-in procedures to ensure both that specific reliable information is not ignored, and that the Attorney General has leeway to refuse to act. The Act provides that an outside prosecutor must be appointed over the Attorney General's objection only if he chooses to ignore specific information submitted.

The Act creates procedural rights, and these must be redressed or the entire statutory scheme, designed to focus attention on claims of criminal misconduct in high places, is meaningless. To hold otherwise would be to declare that the Ethics in Government Act is merely a pious statement of pure political import designed to assuage the public's concern for abuses of trust that followed Watergate. This the Court will not do.

The Ku Klux Klan Act continues to reflect the consistent purpose of Congress, first expressed in the 1860s, to punish those who

> conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured by him by the Constitution or laws of the United States, or because of his having so exercised the same . . . .

18 U.S.C. § 241.

Yet still today the Klan and its neo-Nazi nightriders threaten blacks and others exercising constitutional rights. The United States Commission on Civil Rights in its January, 1983, Report on Intimidation and Violence concluded that "[b]igotry-bred violence and intimidation are manifestations of racism and anti-Semitism that still survive after years of effort spent in their eradica-

tion." *Id.* at 27. The Commission notes that several states report increased Klan and neo-Nazi activity accompanied by threats of violence and many of the groups that have filed *amicus* briefs in this case voice these concerns.

There is no basis in the papers presently before the Court to determine the level of federal involvement in the Greensboro atrocity. But where information suggests that persons in positions of trust in our government may have through passivity, negligence or overt action encouraged such violence surely the issue should be pursued within the framework of the Ethics in Government Act as Congress has directed.

The defendant's motion to dismiss is denied. Defendant shall answer the complaint within two weeks.

---

5. Or "independent counsel," as that function is

now labeled under the amended Act.