**John F. BANZHAF, III, et al., Plaintiffs,**

v.

**William F. SMITH, et al., Defendants.**

**Civ. A. No. 83–3161.**

United States District Court,
District of Columbia.

Feb. 29, 1984.

See also, D.C., 588 F.Supp. 1498.

John F. Banzhaf, III, Peter H. Meyers, Washington, D.C., for plaintiffs.

David J. Anderson, Susan Riley, U.S. Dept. of Justice, Civil Div., Washington, D.C., for defendants.

## OPINION

HAROLD H. GREENE, District Judge.

This is an action under the Ethics in Government Act (Ethics Act), 28 U.S.C. §§ 591 *et seq.*, to require the Attorney General to appoint an Independent Counsel[1] to investigate whether criminal offenses were committed by high-level officials in the course of an alleged transmittal of certain briefing materials from the Carter White House to the headquarters of the then candidate for President Ronald Reagan. Presently before the Court is defendants' motion to dismiss,[2] in which it is claimed that plaintiffs lack standing to bring the action[3] and that they have failed to submit information that is sufficiently specific and credible to cause an investigation to be conducted under the statute. For a better comprehension of the issues and the underlying facts, it is convenient to discuss these defenses in inverse order.

### I

The Ethics Act was enacted in the aftermath of Watergate to establish procedures for the avoidance of the actual or perceived conflicts of interest which may arise when the Attorney General investigates alleged criminal wrongdoing by other high government officials. The Congress believed that an independent prosecutor, who would be free from the divided loyalties which may afflict officials of the Justice Department in these circumstances, would be more likely to be guided by politically neutral principles of fairness and justice.[4]

To these ends, the statute provides in section 592(a) that if the Attorney General receives specific and credible evidence[5] that a high-level federal official[6] has committed a federal criminal offense, he "shall" conduct a preliminary investigation. In addition to its mandatory nature, the investigation required by the Act differs from an investigation conducted by the Department of Justice under normal circumstances in the following principal respects.

First, an Ethics Act investigation, which may last not more than ninety days,[7] is "preliminary," that is, it is not and it may not become a full-fledged criminal investigation. Its purposes are only to weed out frivolous or groundless allegations and to determine whether the case warrants further investigation.[8] Consequently, as soon as the Attorney General determines that the allegations are serious or have a potential chance of substantiation, his role is over: the case must be referred to a special judicial body (see *infra*) for the appointment of an Independent Counsel.[9]

---

1. Under prior law, that official was known as a Special Prosecutor.

2. The motion was filed on January 3, 1984; plaintiffs filed their opposition on January 26, 1984; a reply was received February 15, 1984; and a hearing was held on the motion February 22, 1984.

3. A related claim is that Congress did not intend to create a private judicial remedy for the Attorney General's failure to comply with the Act.

4. S.Rep. No. 170, 95th Cong., 1st Sess. 5–6 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad. News 4216, 4221–22 (hereinafter S.Rep. 170).

5. Although the statute provides that it is the responsibility of the Attorney General to determine whether grounds to investigate exist, it specifies that, in making this decision, he "shall" consider the decree of specificity of the information received, and the credibility of the source of the information. Section 592(a)(1). The court in *Dellums v. Smith,* 573 F.Supp. 1489, 1499 (N.D.Cal.1983), concluded that in

view of these provisions, the Attorney General's task is ministerial.

6. That category includes the President, Vice President, members of the Cabinet, high-level Justice Department officials, the Director and the Deputy Director of the Central Intelligence Agency, the Commissioner of Internal Revenue, and various national and Presidential campaign officials. Section 591(b).

7. Section 592(b)(2). Under section 593(f), "[u]pon a showing of good cause by the Attorney General," the special division of the Court of Appeals (see *infra*) may "grant a single extension ... for a period not to exceed sixty days."

8. S.Rep. 170 at 54, 1978 U.S.Code Cong. & Ad. News at 4270.

9. S.Rep. 170, 1978 U.S.Code Cong. & Ad.News at 4270–71. See also, section 597 ("whenever a matter is in the prosecutorial jurisdiction of a [sic] independent counsel ... the Department of

Second, to ensure that the Attorney General does not conduct a full criminal investigation and thereby usurp the authority of the Independent Counsel, the Act prohibits the Attorney General from convening grand juries, plea bargaining, granting immunity, and issuing subpoenas.[10]

Third, if at the conclusion of an Ethics Act investigation, the Attorney General determines that further investigation or prosecution is not warranted, he must submit a memorandum containing both a summary of the information received and a summary of the results of the investigation to a special division of the U.S. Court of Appeals[11] which has the authority to appoint an Independent Counsel to take over any further investigation and prosecution.[12] The summary of information must be sufficiently detailed to apprise the special judicial division of the essence of the allegations and the information received by the Department of Justice; the summary of the results must be sufficiently comprehensive to enable the special judicial division to determine what efforts the Department made to determine the truth of the allegations and what, if anything, it did to uncover additional evidence.[13] When conducting investigations not covered by the Ethics Act, the Attorney General is, of course, free to pursue his own course and reach his own conclusions without accounting to anyone.

The complaint in this case alleges, *inter alia,* that, according to information available on the public record, hundreds of pages of documents from the White House and the Executive Offices were removed or copied and then turned over to the 1980 Reagan campaign organization; that four of President Reagan's present or former aides[14] have admitted to possessing or seeing such materials; that at least some of these aides[15] knew that the documents had been taken from the Carter White House; that an operation existed to collect inside information on the Carter campaign through means of a "mole" and otherwise; and that several high Administration officials[16] appear to have made contradictory statements concerning these papers. Plaintiffs claim that the individuals involved in these activities may have violated one or more federal criminal laws.[17]

The government argues that this information is not specific or credible, and that plaintiffs have for that reason failed to state a claim upon which relief may be granted. Indeed, the government goes so far as to assert, more pointedly, that the term "mole" has no "criminal overtones"; that there are likewise no such "overtones" to an information gathering apparatus employed by a Presidential campaign which

Justice ... shall suspend all investigations and proceedings...").

**10.** Section 592(a)(2).

**11.** Section 592(b)(2).

**12.** If, upon completion of the preliminary investigation, the Attorney General finds that there are no reasonable grounds to believe that further investigation or prosecution is warranted, he must so notify a special division of the Court of Appeals; if he finds that the matter warrants further investigation or prosecution (or if he fails to act within ninety days) he must apply to that division for the appointment of an Independent Counsel. Section 592(b)(1), (c)(1).

**13.** S.Rep. 170 at 56, 1978 U.S.Code Cong. & Ad.News at 4272.

**14.** James A. Baker, III, White House chief of staff; David Stockman, Director of the Office of Management and Budget; David Gergen, White House Communications Director; and Richard Allen, former National Security Advisor.

**15.** *E.g.,* Baker and Stockman.

**16.** Plaintiffs allege that the following persons made such contradictory statements: Baker and William Casey, Director of the Central Intelligence Agency; Allen and Jerry D. Jennings, Director of the White House Office of Science and Technology; and Baker and Gergen.

**17.** Among the laws mentioned in the complaint are those dealing with conspiracy (section 371 of title 18); interference with nomination or election of candidate for office of President (section 595); theft of records of the United States (section 641, 654, 661, 2112); disclosure of classified or confidential information (sections 798, 1905); and removal of records (section 2071).

uses former agents of the FBI and the CIA; and that the statement of Budget Director Stockman—that briefing books were "filched"—may have had a connotation other than theft. Memorandum of Points and Authorities at 19–21.

These contentions entirely lack merit. To be sure, none of the information summarized above is sufficient, without more, to prove the guilt of any particular individual beyond a reasonable doubt; it may not even be sufficient to support the indictment of any particular individual by a grand jury. But that is not the standard that Congress had in mind when it directed that an Ethics Act investigation be conducted whenever information of high-level involvement in criminal conduct is received. In fact, the intention of the Congress is the precise opposite. The Senate Report states that

> as soon as there is *any indication whatsoever* that the allegations involving a high level official may be serious or have *any potential chance of substantiation*, a special prosecutor should be appointed to take over the investigation.

(emphasis added). S.Rep. 170 at 54, 1978 U.S.Code Cong. & Ad.News at 4270.

**18.** It strains credulity that a prosecutor who, under any other circumstances, received information that a highly-placed public official had admitted that classified or other significant documents had been "filched" from the White House, would simply sit back on the assumption that this filching had a "connotation other than theft." Any prosecutor, careful or careless, eager or lethargic, would on the receipt of such information conduct at least a preliminary investigation. The Attorney General's authority under the Ethics Act may be broad; it is not unlimited. See 5 U.S.C. § 706(2)(A).

**19.** The media reported several days after the hearing on the motion to dismiss that the Department had concluded its eight-month investigation and had issued a three-page report stating that no evidence had been found of any plan or conspiracy by Reagan officials to obtain Carter briefing materials or any other confidential, internal Carter documents. See *Washington Post*, February 24, 1984, p. 1, col. 6; *The New York Times*, February 24, 1984, p. 1, col. 1.

**20.** Neither the credibility nor the specificity of the information supplied by plaintiffs is diminished by the fact that plaintiffs did not discover

There can be no question that the admissions, contradictions, and other information suggestive of criminal activity would normally generate at least a preliminary investigation to determine whether those who were seemingly implicated did, in fact, violate the law.[18] If any proof of that proposition were needed, it is supplied by the Department of Justice itself. By the government's own admission, the Department has conducted "a thorough and searching investigation of the transmittal of the briefing papers" in the course of which "over 200 interviews have been conducted and numerous criminal statutes have been considered, including those cited by plaintiffs." Memorandum of Points and Authorities at 21–22.[19]

It is difficult to understand on what basis the government can conduct that kind of an investigation and yet assert at the same time that when plaintiffs furnished evidence similar to that which generated the Department's inquiry, they failed to provide information that is sufficiently specific and credible to cause an Ethics Act investigation to be conducted.[20] The two types of investigations would obviously be triggered by evidence of the same or similar character.[21] The difference between them lies

it through their own confidential or other "live" sources but compiled it from published newspaper and magazine reports. While publication in the media does not necessarily endow information with special attributes of credibility, it is not deprived of those attributes merely because there has been such publication. The Watergate episode teaches that the media sometimes have the independence and resources necessary for the preliminary collection of facts which may later be used in a more structured form by legislative, judicial, or executive officials.

**21.** An Ethics Act investigation would be more limited in two respects. First, it is concerned only with wrongdoing by a special class—high-ranking executive officials. In view of the array of officials named in the complaint in this case, it could not seriously be maintained that, while evidence of wrongdoing sufficient to cause a criminal investigation is present, it is not sufficient to cause an investigation of an individual subject to the Ethics Act. Second, the Ethics Act investigation is limited solely to the question whether the submitted information is sufficient to constitute grounds to investigate that a covered official committed a violation of any Federal criminal law. Section 592(a)(1).

not in the quantity or quality of the evidence required for their initiation but in the fact that at the conclusion of one the Attorney General makes his own decision as to whether or not he should prosecute, while at the conclusion of the other he must account to the special division of the Court of Appeals.

■ For the reasons stated, the Court finds on the basis of the present record [22] that plaintiffs have submitted information of sufficient specificity and credibility to require the Attorney General to conduct a preliminary investigation provided for under the Ethics Act.[23] Accordingly, defendants' contention that the complaint fails to state a claim upon which relief may be granted is rejected.

## II

The government argues that Congress did not intend to confer any private rights when it enacted the Ethics Act and that plaintiffs therefore lack standing to maintain this lawsuit.

Plaintiffs advance two theories in support of their claimed standing: (1) that they have standing as citizens,[24] as attorneys and as officers of the court,[25] and as public interest lawyers whose prior legal actions helped to establish the Ethics Act,[26] and (2) that they have standing because they presented sufficiently specific and credible information to the Attorney General to trigger the procedural mechanism leading to the appointment of an independent counsel under the Act. It is not necessary to explore the first theory because plaintiffs have standing under the second.

■ To establish standing, plaintiffs must show that they suffered "injury-in-fact," that is, that they sustained some actual or threatened injury as a result of the allegedly illegal conduct of the defendants (see, e.g., Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979); and Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)) and that the interest they seek to protect is arguably with the zone of interests to be protected or regulated by the statute. Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

■ The government acknowledges that, as a general rule, the deprivation of procedural rights granted by a statute constitutes sufficient injury to confer standing. Reply Brief at 3. See also, Schlesinger v. Reservists to Stop the War, 418 U.S. 208, 224 n. 14, 94 S.Ct. 2925, 2933 n. 14, 41

---

22. It may be that the defendants' answer to the complaint will contradict plaintiffs'. factual allegations.

23. The Justice Department's own investigation clearly does not comply with the requirements of the Act, if for no other reason than that the Attorney General failed to file a report with the special division of the Court of Appeals. Moreover, as indicated supra, the Attorney General only has authority to investigate the allegations of criminal wrongdoing with a view toward making a report to that division concerning the appointment of an independent prosecutor. Accordingly, the purportedly definitive conclusions drawn by the Department of Justice on the basis of its own investigation, lack validity under the statute. Of course, in the event that an Independent Counsel is ultimately appointed, that official would decide on the extent to which he wished to rely on the facts addressed in the Department of Justice investigation, what additional facts should be developed, and what conclusions should be drawn from all the evidence.

24. On a related basis, plaintiffs also claim standing as voters, taxpayers, and campaign contributors.

25. It is plaintiffs' theory that as attorneys they have a special interest in the impartial administration of justice.

26. Plaintiff John Banzhaf asserts that, as a public interest lawyer and law professor, he was perhaps the first person to raise the issue of the need for an impartial outside prosecutor to investigate the allegations against then Vice President Agnew and then President Nixon, and that these efforts and the events that followed led to the enactment of the Ethics Act.

L.Ed.2d 706 (1974). Accordingly, if Congress created a legal right to a preliminary investigation for persons who supply the required information, then the requisite interest for standing is found in the invasion of that right; *i.e.*, the Attorney General's refusal to conduct that investigation as required by the Act. Thus, plaintiffs have standing [27] if the Ethics Act confers rights to persons who present to the Attorney General specific and credible information of high-level law violations.

That issue was considered and answered in the affirmative in the only two cases which have thus far arisen under the Act—*Nathan v. Attorney General*, 557 F.Supp. 1186 (D.D.C.1983) (Gesell, J.) [28] and *Dellums v. Smith*, 573 F.Supp. 1489 (N.D.Cal. 1983) (Weigel, J.). *Nathan* involved a request by the victims of a terrorist attack in Greensboro, North Carolina for an investigation of charges that high officials of the government had authorized or negligently permitted various violations of civil rights and that they had conspired to conceal their involvement. In *Dellums*, plaintiffs charged that, by supporting paramilitary operations against Nicaragua, high federal officials violated the Neutrality Act (18 U.S.C. § 960) and related statutes.

In response to arguments similar to those made in this case, Judge Gesell found the statute's limited restriction on court review [29] to be suggestive of an intent by the Congress not to foreclose such review in other appropriate circumstances, *i.e.*, where the Attorney General refuses to conduct the preliminary investigation mandated by the statute. He further found that, if the Act is to be enforceable at all, it must

be through those who supply specific information, and that the plaintiffs, as victims of the alleged crime, had, for standing purposes, far more than a generalized grievance. See 557 F.Supp. at 1188–89. Based upon these conclusions, the court held that the plaintiffs had standing, and it denied the government's motion to dismiss.

Similarly, in *Dellums*, Judge Weigel concluded that Congress gave those persons who supplied the required information a procedural right to a preliminary investigation, and that the scheme of the Act—to remove certain actions and determinations from the political process into the public realm—supported a decision in favor of standing by the plaintiffs. That court, too, denied a government motion to dismiss.[30]

█ This Court is in agreement with the *Nathan* and *Dellums* conclusions. Where Congress has provided that, upon request of a citizen, the government has a duty to act and the government then fails to act, the person making the request has standing to enforce his right to government action [31] by a lawsuit in federal court. This principle has been applied in such diverse areas as the Freedom of Information Act, the National Environmental Policy Act, and the False Claims Act. See, *e.g.*, *City of Davis v. Coleman*, 521 F.2d 661, 672 (9th Cir.1975); *Nixon v. Sampson*, 389 F.Supp. 107, 121–22 (D.D.C.1975); see also, 31 U.S.C. § 231–35. As the court in *Dellums* correctly noted,

> [t]he Ethics in Government Act ... envisions that information supplied by persons pursuant to its provisions will be

**27.** Because the right to a preliminary investigation is a protected procedural right, the zone of interests prong of standing is supported here by considerations similar to those involved in the injury prong.

**28.** See also, *Nathan v. United States*, 563 F.Supp. 815 (D.D.C.1983). An appeal is pending, and the Court is advised that briefs have been filed and that the Court of Appeals has scheduled oral argument.

**29.** The only express limitation on judicial review is contained in section 592(f). That sec-

tion provides that the Attorney General's application to the special judicial division for the application of an Independent Counsel "shall not be reviewable in any court."

**30.** The court has also denied a motion for reconsideration.

**31.** The underlying interest or injury need not be an economic one. *Data Processing Service v. Camp*, 397 U.S. 150, 154, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970); *Sierra Club v. Morton*, 405 U.S. 727, 734, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972).

forwarded and considered by appropriate decisionmakers named in the statute ... [and] that plaintiffs have standing because Congress conferred upon them a right to a judicial determination.

573 F.Supp. at 1095–96.

This conclusion is particularly compelling in the context of this statute when the alternative is considered,[32] for if the government is right, *no one has standing* to enforce the Ethics Act.[33]

This contention is supported neither by the statutory language [34] nor by the legislative purpose. The Ethics Act was enacted to prevent a recurrence of the Watergate abuses perpetrated by, among other individuals, the then Attorney General. It accomplishes that objective by requiring the Attorney General, upon the receipt of information that certain high officials violated criminal laws, promptly to undertake an investigation and to report thereon to a special judicial body. The obvious purpose of this procedure is to provide some check

on the Attorney General who is a political appointee of the President and who, as a member of an elected Administration, is placed in a difficult situation when called upon to investigate allegations against Administration officials.[35]

Yet if the government's argument is correct, that entire process can be short-circuited by the simple devise of a refusal of the Attorney General (either on his own volition or on instructions from White House officials who may be the targets of the investigation) to initiate the required investigation. For if no one has standing to sue, there will be no accountability: no one could require the Attorney General to conduct a preliminary investigation in accordance with the Act, to report to the special judicial division, or to apply in appropriate cases for the appointment of Independent Counsel.[36]

Stripped of an enforcement mechanism, the statute would be nothing more than a

---

**32.** To be sure, the Court could not find that a particular plaintiff has standing merely because otherwise no one would have standing (*Schlesinger v. Reservists, supra,* 418 U.S. at 227, 94 S.Ct. at 2935) since some matters may have deliberately been left by the Congress to the political process. But that reasoning can hardly be applied to a statute, such as this one, which was intended to remove certain decisions from that process.

**33.** See, *e.g.,* Memorandum of Points and Authorities at 15–17. Upon inquiry, counsel informed the Court that in the government's view, even former President Carter, the owner or custodian of the allegedly stolen documents, would not have standing to sue.

**34.** The decision on the conduct of a preliminary investigation is not discretionary under the statute. Rather, the Ethics Act requires the Attorney General to conduct such an investigation whenever he is presented with specific and credible information that a covered official may have committed a crime. See note 5 *supra.*

**35.** Not only is there a potential for favoritism but there is also a danger that, to avoid the risk of a loss of public confidence, the Attorney General may bend over backwards to make harsh and unfair prosecutorial decisions against other public officials. S.Rep. No. 496, 97th Cong., 2d Sess., *reprinted in* 1982 U.S.Code Cong. & Ad.News at 3540–41.

**36.** Congressional oversight cannot accomplish these objectives. Section 595(e) provides that the members of the Judiciary Committees of the House and the Senate may request that the Attorney General apply for the appointment of an Independent Counsel. However, if the government is correct in its arguments in this case, the Committees would have no greater standing than the plaintiffs here. Indeed, it is doubtful that the Congress would be able even to enforce the statutory requirement that the Attorney General supply it with a written notification of actions taken pursuant to the congressional request and an explanation in the event no action is taken. See *Immigration and Naturalization Service v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983).

The general power of congressional committees to investigate—such as that of a subcommittee of the House Committee on Post Office and Civil Service which is presently conducting an investigation into the subject of the removal of the Carter papers—is not likely to be more effective. Legislative committees have no power to prosecute, and it is problematical, in any event, whether they will receive the requisite cooperation from the Executive Branch.

As for the special division of the Court of Appeals, it has ruled that it lacks jurisdiction at the present stage of the proceedings. Order 82–3, U.S. Court of Appeals for the District of Columbia, Special Prosecutors Division, September 13, 1982.

hortatory statement from the Congress to the Executive Branch.[37] That is not the way in which statutes, unlike resolutions or informal requests, are normally viewed. In any event, absent a direction to that effect in the Act or the legislative history, the Court is not prepared to adopt so defeatist a view of a law which had its origins in the dereliction of duty of the highest officers of the Republic and which was intended to prevent their recurrence.[38]

### III

The government finally contends that, even if *Nathan* and *Dellums* were correctly decided, and that in these cases the plaintiffs did have standing, the plaintiffs in this case do not. In that view, if plaintiffs, who are no more than citizens and lawyers, have standing, the floodgates would be open.

That argument misconceives what is involved. As indicated above, plaintiffs' standing stems not from their citizenship or their membership in the Bar; it stems from their submission to the Attorney General of information that is plainly adequate under the statute to trigger a preliminary investigation.[39] The question of any injury

to plaintiffs apart from the Attorney General's failure to conduct a preliminary investigation in response to their request is therefore irrelevant.

Insofar as the "floodgates" argument is concerned, the requirement of specificity and credibility establishes an inherent limitation on the use of the statute and the burdens on the Attorney General. It will presumably not be a frequent occurrence that someone could or would submit a petition to the Department of Justice containing information that specifically and credibly charged one or more high-level officials with committing a federal criminal offense.[40] But on those rare occasions when such information is submitted, the Attorney General has the duty under the law to act.

To the extent that a distinction may be made between this case and *Nathan* and *Dellums*, the instant case even more clearly justifies a finding that the plaintiffs have standing to enforce the statute. Unlike the issue of American involvement in Nicaragua or the alleged violations of the civil rights laws in an alleged assault by members of the Ku Klux Klan on members

---

**37.** The government argues that, surely, the Attorney General may be trusted to carry out the law. As a general rule that is undoubtedly true, but as the Congress discovered to its dismay during the Watergate days, not every attorney general can, under all circumstances, be counted upon to investigate vigorously and impartially. Moreover, the Ethics Act was designed to avoid both actual and perceived conflicts of interest. Where a potential conflict of interest or loyalties is present, some accountability is necessary. That the possibility of neglect by the Department of Justice of its statutory duties is not idle and unwarranted speculation appears to be affirmed, on the present record, by the events surrounding this controversy. See note 46 *infra*.

**38.** Actually, to the extent that the will of the Congress may be discerned from the legislative materials, Congress wanted this law to have actual force and to be more than a "pious statement of pure political import." *Nathan v. Attorney General, supra,* 557 F.Supp. at 1190. Because attorneys general had been reluctant or unwilling to appoint special prosecutors where this appeared to be appropriate because of inherent conflicts of interest, Congress found it

necessary to set forth those circumstances in which the Attorney General *must* conduct a preliminary investigation, report to the special judicial division, and, if the allegations warranted further investigation, apply for the appointment of an independent counsel. S.Rep. 170, 1978 U.S.Code Cong. & Ad.News at 4227. When Congress amended the Act in 1982, it reconsidered the need for the special prosecutor provisions and reaffirmed its earlier finding that "[i]t was not sufficient to rely on the President or the Attorney General to appoint a temporary special prosecutor." S.Rep. No. 97–496, *reprinted in* 1982 U.S.Code Cong. & Ad.News at 3540. See also, the general discussions regarding legislative history in *Nathan* and *Dellums, supra*.

**39.** It is not necessary to decide on the proper scope of judicial review if the issue of the specificity and credibility of the information was, unlike here, a close one.

**40.** Since the Ethics Act was passed in 1978, only three private enforcement actions have been filed in federal court.

of the Communist Party in North Carolina, this case involves the very evil that prompted the adoption of the Ethics Act—alleged political chicanery at the highest levels of government in the context of a political campaign.[41] To hold that in that kind of situation, the Attorney General may refuse even to conduct the preliminary investigation required by that statute, either by making the patently erroneous claim that he had received no specific and credible information concerning law violations, or by arguing successfully that no one has standing to challenge his failure to act, would vitiate that which Congress had sought to achieve in the Ethics Act.

## IV

It may well be that no crime was committed by anyone in connection with the transfer of documents from the White House to the campaign headquarters of the opposing candidate.[42] After all, not every allegation of wrongdoing or even every proven incident of wrongdoing is another Watergate.

Yet there may be here at least one parallel with that unhappy episode.

The Ethics Act plainly contemplates that when the Attorney General receives specific and credible information of law violations by high-level officials, he shall do no more than to conduct a limited investigation with a view solely to determining whether an Independent Counsel should be appointed. Once he has done that, he must stop. He may not conduct his own full-fledged investigation and draw his own conclusions from that investigation. The entire point of the Ethics Act is that, when there are even preliminary indications that high-level officials violated criminal laws, the decision on how to proceed further must be left to independent authority.[43]

According to the allegations of the complaint, ample grounds exist for the conduct of an investigation leading to a determination whether an Independent Counsel ought to be appointed. The only substantive basis [44] on which the Department of Justice has defended or on which it could defend [45] its failure to conduct a preliminary investigation under the Act—that the

41. The involvement of high-level officials is also more apparent here than in *Nathan* (compare 557 F.Supp. at 1188) and this case, unlike *Dellums,* does not involve foreign policy questions (compare 573 F.Supp. at 1502–03).

42. The Court emphasizes that all that is ultimately involved in this lawsuit is a procedural question: who shall investigate charges and who shall decide whether to prosecute—the Attorney General or an Independent Counsel? The complaint does not allege, and this Court passes no judgment as to whether anyone is guilty of wrongdoing, nor does it have jurisdiction to decide that question.

The Court's decision is also limited in that there will not be, in any event, an interference with the prosecutorial discretion of the Attorney General. The duty to conduct a preliminary investigation is clearly distinguishable from the government's discretionary power to prosecute. First, Congress imposed a mandatory duty to conduct a preliminary investigation under the circumstances alleged to exist in this case, and to the extent that such an investigation would normally be viewed as an exercise of prosecutorial discretion, Congress intended to depart from the general rule by making it mandatory in certain limited circumstances. Second, the preliminary investigation and the decision to prosecute are two distinct steps in the statutory

process. The Ethics Act does not disturb the government's discretion in the latter instance. See *Dellums v. Smith, supra,* 573 F.Supp. at 1499–1500. Third, there will be no interference by any court with either an investigation or a prosecution once it has begun; the statute mandates merely that these functions be carried out by a prosecutor other than the Attorney General.

It may be noted that the government acknowledged during oral argument that it makes no claim that the statute is unconstitutional.

43. This is on the common sense assumption that the Independent Counsel who has no political and other loyalties might view collected evidence differently than would an attorney general faced with allegations against his colleagues. In addition, the Independent Counsel might require the development of facts which would not be pursued under the direction of the Department of Justice.

44. In addition to the technical defense that no one has standing to question the Attorney General's decision.

45. See S.Rep. No. 97–496 at 11–12, *reprinted in* 1982 U.S.Code Cong. & Ad.News at 3537–38, 3547. But see note 22 *supra.*

evidence of wrongdoing is not sufficiently specific or credible to warrant even a preliminary inquiry—is without any reasonable basis. In short, the Department of Justice appears to have simply ignored the requirements of the Ethics Act.[46]

Thus, the procedural mechanism adopted in the aftermath of Watergate for an independent, dispassionate inquiry into possible wrongdoing has been frustrated at the very outset. If the Department's decision stands, the public will never know whether the special division of the Court of Appeals would have been satisfied with the scope and the results of the inquiry and whether an Independent Counsel would or would not have found evidence of wrongdoing. The Attorney General fiat would effectively end any possibility of an independent decision. This result comports neither with the language nor with the purpose of the Ethics Act.

The motion to dismiss is denied. The defendants shall file their answer to the complaint within ten days.

---

**46.** Even if no one had standing, the Attorney General would still have his own, independent obligation under the Act. Upon coming into possession, *from any source*, of information concerning law violations by high-level officials, he has the responsibility under the statute to conduct a preliminary investigation and to submit the results to the special judicial division. If that had been done when the Department learned of possible law violations, and if at that juncture the special judicial division had been satisfied that the evidence was not sufficiently specific or credible for the appointment of an Independent Counsel, the statutory requirements would have been satisfied. On the other hand, if at the conclusion of the preliminary investigation unexplored evidence of law violations remained, further investigative efforts would have been required to be conducted under the aegis of an Independent Counsel. The third hypothesis—that there was insufficient evidence for the investigation—is conclusively contradicted by the fact that the Department saw a valid basis for conducting its own eight-month inquiry. The course of action evidently adopted by the Department—to merge the preliminary investigation with a full-fledged, final investigation—failed entirely to take account of the statutory mandate that the two inquiries are to be directed by two different prosecutorial entities.