Martha NATHAN, et al.

v.

William French SMITH, U.S. Attorney General.

Martha NATHAN, et al., Appellants,

v.

William French SMITH, U.S. Attorney General, Appellant.

Nos. 83-1619, 83-1643.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 28, 1984.

Decided June 5, 1984.

As Amended June 5 and June 14, 1984.

Davis, sitting by designation and Bork, Circuit Judges, concurred and filed opinions.

Harry T. Edwards, Circuit Judge, concurred in result and filed statement.

John F. Cordes, Atty., Dept. of Justice, Washington, D.C., with whom J. Paul McGrath, Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D.C., were on the brief for appellant in No. 83–1619 and for cross-appellee in No. 83–1643. Richard K. Willard, Atty., Dept. of Justice, Washington, D.C., also entered an appearance for Smith, U.S. Attorney General.

Daniel P. Sheehan, Washington, D.C., for appellee in No. 83–1619 and for cross-appellant in No. 83–1643.

Before EDWARDS, BORK and DAVIS *, Circuit Judges.

Concurring opinions filed by Circuit Judge DAVIS, Circuit Judge BORK and Circuit Judge HARRY T. EDWARDS.

### PER CURIAM:

We reverse the District Court's decision granting in part plaintiffs' motion for summary judgment.

---

\* Of the United States Court of Appeals for the Federal Circuit sitting by designation pursuant to 28 U.S.C. § 291(a).

**1.** This suit is still pending, awaiting trial.

DAVIS, Circuit Judge, concurring:

These are cross-appeals from an order of the District Court granting in part plaintiffs' motion for summary judgment in this mandamus action, and ordering the Attorney General to conduct a certain preliminary investigation pursuant to 28 U.S.C. § 592 of the Ethics in Government Act. The Attorney General seeks reversal in full of the court's order and the plaintiffs cross-appeal from the refusal of the court to go further and direct the Attorney General to apply for the appointment of a special prosecutor (now independent counsel). This opinion reverses on the ground that the Attorney General could properly refuse to conduct the requested preliminary investigation because plaintiffs had failed to supply him with sufficient specific information.

### I

This suit for mandamus stems from the widely known incident in November 1979 at Greensboro, North Carolina, in which a number of persons were killed or wounded, while conducting an authorized parade, by members of the Ku Klux Klan and the American Nazi Party who made an armed attack on them. Survivors of the attack and relatives and representatives of those killed have claimed that officials, employees, and agents of the Federal Government were involved in causing that incident, and in that connection have brought a court suit in the United States District Court for the Middle District of North Carolina against such persons and entities, as well as others (*Waller v. Butkovich*, 584 F.Supp. 909).[1] The survivors, relatives and representatives (whom we shall call plaintiffs) also unsuccessfully sought appointment by a federal court in North Carolina of a special prosecutor to investigate the Greensboro incident in place of the Civil Rights Division of the Department of Justice.[2] On March 24, 1982, an attorney for

---

**2.** Subsequently, a federal grand jury indictment, signed by the United States Attorney and attorneys for the Civil Rights Division, was issued in North Carolina against eight persons who allegedly participated in the Greensboro attack. *United States v. Griffin, et al.*, No. CR 83–53

plaintiffs wrote to Attorney General Smith requesting an investigation (and appointment of a special prosecutor, now independent counsel) under the Ethics in Government Act, 28 U.S.C. §§ 591 *et seq.* In response, the Assistant Attorney General in charge of the Civil Rights Division stated (in July 1982), on behalf of the Attorney General, that the Department had taken no steps under the Ethics in Government Act because "the Attorney General has not received information that a person covered by the Special Prosecutor Statute has committed a violation of federal criminal law," and there was no evidence of an apparent or actual conflict of interest on the part of government personnel. Plaintiffs then sought appointment of a special prosecutor by the special division of this court concerned with appointing special prosecutors under the Ethics in Government Act; on September 13, 1982, that division denied the request on the ground that it had no jurisdiction to grant the relief sought.

This petition for mandamus was filed in the court below on September 23, 1982. It alleged that on March 24, 1982, and within 90 days thereafter, plaintiffs supplied the Attorney General with information that officials covered by the Ethics in Government Act had violated federal criminal law, but that the Attorney General had failed to conduct the preliminary investigation called for by the Act. The Government moved to dismiss on the two grounds that there was no private right of action to enforce the Act and no claim stated because insufficient factual basis for an investigation had been alleged. This motion was denied by the District Court. 557 F.Supp. 1186 (D.D. C.1983). Plaintiffs moved for summary judgment which was partially granted.

563 F.Supp. 815 (D.D.C.1983). The District Court ordered the Attorney General to conduct a preliminary investigation under 28 U.S.C. § 592, but declined to order that he apply for the appointment of a special prosecutor. As I have said, both parties appeal.

II

At the time the plaintiffs asked the Attorney General in 1982 to proceed under the Ethics in Government Act that statute required the Attorney General to conduct an investigation of charges against designated high-level officials whenever he receives "specific information" that such an official "has committed a violation of any Federal criminal laws other than a violation constituting a petty offense." 28 U.S.C. § 591. On receipt of such "specific information" the Attorney General "shall conduct, for a period not to exceed ninety days, such preliminary investigation of the matter as the Attorney General deems appropriate." [3] The Act applied to the President and Vice-President, cabinet-level officers, certain White House and Justice Department officials, and other high-ranking government or presidential campaign officials. 28 U.S.C. § 591(b).

On completion of the preliminary investigation, if the Attorney General finds the matter so unsubstantiated [4] that no further investigation or prosecution is warranted, he shall so notify the special division of this court (created by the Act) and that division shall have no power to appoint a special prosecutor. However, if he finds on completion of the preliminary investigation that

cl-G, *et seq.* None of the defendants was a federal officer or employee, but one was an alleged FBI informant. The case has been tried and the defendants acquitted.

**3.** By Pub.L. 97–409, Jan. 3, 1983, 96 Stat. 2039–2041, the Act was amended to delete the word "specific" before "information," and to substitute the following:
  In determining whether grounds to investigate exist, the Attorney General shall consider—

  (A) the degree of specificity of the information received, and
  (B) the credibility of the source of the information.
The amendment also substituted, among other things, the term "independent counsel" for "special prosecutor."

**4.** The 1983 amendment (*see* fn. 3, *supra* ) substituted the standard of "no reasonable ground to believe."

the matter warrants [5] further investigation or prosecution, or if ninety days elapse from the receipt of the information without determination by the Attorney General that the matter is so unsubstantiated [6] as not to warrant further investigation or prosecution, "then the Attorney General shall apply to the division of the court for the appointment of a special prosecutor" (now "independent counsel").[7] On receipt of such an application the division of the court "shall appoint an apropriate special prosecutor [independent counsel] and shall define that special prosecutor's [independent counsel's] prosecutorial jurisdiction." 28 U.S.C. § 593(b).

In this case the only officials possibly covered by the Act are (1) Attorney General William French Smith; (2) Assistant Attorney General William Bradford Reynolds; and (3) Federal Bureau of Investigation (FBI) Director William Webster. Plaintiffs mention some others, but none fits into any of the classes designated by the Act and the District Court did not consider any other officials.

### III

Appellant Attorney General raises substantial questions as to the standing of these plaintiffs to sue under the Ethics in Government Act to compel the Attorney General to act, and also as to the judicial reviewability of the Attorney General's actions and determinations. This opinion does not reach or determine those issues; instead, the opinion assumes *arguendo*, and without deciding in any way, that plaintiffs have such rights to sue and to obtain judicial review.[8] The only matter

considered in this opinion is whether plaintiffs supplied sufficient "specific information" to the Attorney General to trigger a preliminary investigation into charges against the three covered officials (Attorney General Smith; Assistant Attorney General Reynolds; Director Webster). I hold that plaintiffs did not supply such "specific information," and therefore that the District Court's order granting summary judgment must be reversed and the mandamus petition denied.

A. Before delving into the adequacy of the information received by the Attorney General, we face two preliminary issues. One concerns the version of the Ethics in Government Act which should be applied— the original 1978 statute or the amended statute adopted in January 1983. When plaintiffs made their demand on the Attorney General (March 1982) and he refused to comply (July 1982) and also when this action was begun (September 1982), the original version was in effect; however, when the District Court decided this case (May 1983) and the appeals were taken (June 1983), the amendment (adopted in January 1983) had become operative. I need not decide for this opinion which form of the statute governs. The sole problem considered and determined by this opinion is the specificity of the information, and on that point the two versions are substantially the same though somewhat different in wording (see Part II, *supra*, for the difference in language). Both call in terms for specific information[9] and the legislative history of the 1983 amendment indicates that the original specificity standard was expressly retained. S.Rep. No. 97–496,

---

5. The 1983 amendment (*see* fn. 3, *supra* ) substituted the standard of "reasonable grounds to believe."

6. *See* fn. 4, *supra*.

7. Under the 1983 amendment, the special division of this court may grant, for good cause shown, "a single extension of the preliminary investigation . . . for a period not to exceed sixty days." 28 U.S.C. § 593(f) (as amended in 1983).

8. It is not improper to take this course. "This is one of those cases in which it is easier for the court to decide the merits than jurisdiction."

*Monett v. United States,* 419 F.2d 434, 436 fn. 4 (Ct.Cl.1969), *cert. denied,* 400 U.S. 846, 91 S.Ct. 91, 27 L.Ed.2d 82 (1970); *see also Boeing Co. v. United States,* 480 F.2d 854, 856 (Ct.Cl.1973). The Supreme Court followed this procedure in *Brooks v. Dewar,* 313 U.S. 354, 359–360, 61 S.Ct. 979, 981, 85 L.Ed. 1399 (1941).

9. Initial act: "specific information"; 1983 amendment: requires the Attorney General to consider "the degree of specificity of the information received."

97th Cong., 2d Sess. at 12, reprinted in [1982] U.S.Code Cong. & Ad.News 3537, 3548. In this case, therefore, there is no operative difference.[10]

Another threshold question is whether we should take account of material brought by the plaintiffs into the case after the demand made on the Attorney General in March 1982 and the expiration of ninety days therefrom (August 1982). The Department of Justice strongly protested admission of some of this material (a May 1983 affidavit of plaintiffs' counsel submitted to the court below and plaintiffs' Statement of Material Facts Not In Dispute likewise submitted to the District Court). It was contended that discovery would be necessary if these materials (which asserted, in substantial part, the alleged contents of certain oral communications by plaintiffs' attorney to Department of Justice attorneys) were to be considered. Apparently the District Court did not consider the factual statements in either of these particular documents in making its determination that sufficient specific information had been supplied. Moreover, the uncorroborated statements as to oral conversations with the Department of Justice—largely denied in significant aspects by the Department—were submitted to the court below after the 1983 amendment to the Ethics Act which expressly authorized the Attorney General, "[i]n determining whether grounds to investigate exist," to consider "the credibility of the source of the information." It is highly probable that Congress would expect that new standard to control new post-amendment materials submitted thereafter, particularly those involving alleged oral communications. I would hold, therefore, that the District Court did not err in putting those disputed materials to one side, and I shall do the same. I also decide, however, to take account of plaintiffs' petition in the District Court to the extent that that petition and its attachments characterized (and perhaps expanded) the material available to

the Attorney General in the period March-August 1982.[11]

B. Next is the problem of the standard applicable to the information to consider in deciding whether a preliminary investigation should have been begun. As I have already pointed out, the Act itself requires "specific" information. The legislative history of the original 1978 enactment shows that this requirement of "specificity" was deliberate and meaningful. H.R.Rep. No. 95–1307, 95th Cong., 2d Sess. (1977) at 6 n. 14, stated that Congress meant "to indicate that general statements, such as 'X is a crook,' without any specific factual support or potential evidence, does not trigger the mechanism." See, also, S.Rep. No. 95–170, 95th Cong., 1st Sess. at 52 (1977), reprinted in [1978] U.S.Code Cong. & Ad.News 4216, 4268 ("the term 'specific information' is used so that the provisions of the chapter will not apply to a generalized allegation of wrongdoing which contains no specific factual support. For example, if the Attorney General receives a letter saying that a particular member of the President's cabinet is a 'crook,' but the letter provides no further information or factual support regarding alleged criminal activity, such a letter would not constitute specific information and the Attorney General would therefore not be required to take any action under this chapter"). When the specificity requirement was continued in the 1983 amendments (see Part III, A, supra), the Senate Report gave this example: "... if a credible source informs the Department of Justice that a named, covered official took money on a given date, in a given place, and provides facts which indicate that it may have been a bribe, this information should trigger a preliminary investigation." S.Rep. No. 97–496, 97th Cong., 2nd Sess. at 12, reprinted in [1982] U.S.Code Cong. & Ad.News 3537, 3548. Aside from the designation of the source as "credible," this example clearly covered the original scope

---

**10.** There is no issue before us as to the "credibility of the source of the information," a criterion added by the 1983 amendment. See infra.

**11.** That petition was never amended.

of "specific information."[12] Thus, the legislative materials strongly emphasized "specific factual support," "facts" indicating a crime, "potential evidence," "suspicious circumstances," particular dates and places—as opposed to a "generalized allegation of wrongdoing." That is the Congressional mandate which must be followed.

I add merely that this case involves a petition for mandamus against federal officials and as in all such actions mandamus cannot be granted unless "the matter is per-adventure clear." *Panama Canal Co. v. Grace Line Co.*, 356 U.S. 309, 318, 78 S.Ct. 752, 757, 2 L.Ed.2d 788 (1958). *See also United States v. Shimer*, 367 U.S. 374, 381–2, 81 S.Ct. 1554, 1559–60, 6 L.Ed.2d 908 (1961).

## IV

I now assess, under these criteria, the information supplied by the plaintiffs with respect to the three higher-level officials. Plaintiffs' general contention is that federal agents, acting at the direction of higher-ranking government officials, caused the Greensboro incident in 1979 and that the Government continued to "cover-up" that participation from that time forward. A conspiracy to that end is asserted to have existed through at least 1982. The present Attorney General, present Assistant Attorney General in charge of the Civil Rights Division, and the Director of the FBI are said to participate and to have participated in that conspiracy. Some factual assertions are made with respect to lower-level government officials and alleged government informants. But because the Ethics in Government Act directs investigations only with respect to designated higher officials, I canvass *seriatim* plaintiffs' information and assertions bearing on the possible criminality of the three particular officials concerned in this action.

A. The first thing to note about Attorney General Smith is that he did not hold that office at the time of the Greensboro incident in 1979 and did not become Attorney General until President Reagan assumed office in January 1981. Attorney General Smith cannot possibly be charged under the Ethics Act with participation in, or planning for, the Greensboro incident itself, but conceivably only with participation in the alleged "cover up" since he became Attorney General. The second thing to note is that none of the materials supplied to the Department of Justice prior to the petition in this action charges Attorney General Smith himself with any crime (though there are charges against lower-ranking federal personnel and agents not covered by the Ethics Act).[13] It was not until the petition for mandamus in this suit that Attorney General Smith was truly "charged."

With respect to alleged criminal conduct of Attorney General Smith the petition alleged the following: (a) Mr. Smith, together with his two immediate predecessors, "each joined and actively participated in the criminal anti-civil rights conspiracy described [in the prior paragraphs of the petition] by willfully and personally directing inferior agents of the United States Department

---

**12.** The legislative history of the amendments says, too, that "if facts *or suspicious circumstances suggesting* that a covered person *may* have engaged in criminal activity comes to the attention of the Department of Justice, these would qualify as 'information sufficient to constitute grounds to investigate,' thus triggering a preliminary investigation." S.Rep. No. 97–496, *supra* at 13, reprinted in [1982] U.S.Code Cong. & Ad.News at 3537, 3549 (emphasis added). The emphasized language does not dilute the requirement of specificity. Mere subjective suspicion is not enough; there must be "circumstances" giving reasonable ground for the suspicion.

**13.** Plaintiffs apparently supplied to the Department of Justice a copy of the amended complaint in *Waller v. Butkovich, supra*, in the Middle District of North Carolina. That complaint simply and very generally charges Smith, along with his two immediate predecessors as Attorney General, as being "responsible for devising, promulgating, implementing and/or permitting the policies, practices and customs of the DEPARTMENT OF JUSTICE, the FBI and CRS [Community Relations Service]."

of Justice to conceal information demonstrating that [three particular persons] were paid agents of the Federal Executive Department acting under direct criminal instructions from their supervisors when they participated in the instigation, organizing and effectuation of the criminal anti-civil rights conspiracy described"; (b) Attorney General Smith was also charged with "causing" certain alleged "control agents" to be withheld from a federal grand jury investigating the Greensboro incident; (c) also, with "causing" the "fact" to be concealed from the grand jury that a particular person was "an undercover agent provocateur" working for and paid by the FBI; (d) with "causing" certain persons to present perjured testimony to the grand jury; (e) with "causing" the Civil Rights Division to refrain from presenting to the grand jury the "body of information" "demonstrating" the role of the FBI and "the Federal Executive Department's" participation in various anti-civil rights and anti-black activities; and (f) with "causing," "on information and belief," the daily diaries of three persons (alleged federal agents) to be withheld from the grand jury.

As the District Court observed (though it ordered the Attorney General to conduct a preliminary investigation under the Ethics Act): "A review of the entire record herein discloses that the claims of plaintiffs as to the involvement of the Attorney General and the Director of the FBI in a conspiracy are based merely on inferences *unsupported by any concrete facts*" (emphasis added). I wholly agree with that statement and add that, to me, all the assertions and allegations against the Attorney General in the petition and earlier documents are generalized assertions "without any specific factual support or potential evidence"— hardly more than asserting, in the words of the legislative history, that the Attorney General must have been a "crook" or conspirator. There are no hard or concrete or

specific factual assertions, giving some indication of objective reality, or that the generalized charges have some foundation or support in actual fact. Such overly general statements as "caused," "directed," "participated," "joined"—assertions easily made in the absence of any specific factual knowledge or information—do not meet the Ethics Act's requirements. Unless one already starts with the *a priori* belief (as plaintiffs apparently do) that the highest levels of the Department of Justice have conspired to carry on the wrongdoing asserted to have occurred—*i.e.,* the crime said to have been committed—the generalized, non-fact-based, non-specific materials plaintiffs have supplied would not suggest to an objective person that there was reason for an investigation of Attorney General Smith.[14]

The District Court thought it enough "specific information" under the Ethics Act that the "Attorney General was advised as to the disruption of the parade at Greensboro in 1979 and the attendant violence; he was advised that the Federal Bureau of Investigation and the Bureau of Alcohol, Tobacco and Firearms were in some degree of contact with some participants before the events; and the contentions of the plaintiffs as to the suspected existence of a conspiracy which should have been known to the Attorney General and the Director of the FBI were fully outlined in a pleading submitted to him." 563 F.Supp. at 816. I think, however, that this summary of known information (which I can accept) was plainly not enough because it fails to recognize, first, that the Ethics Act deals only with possible crimes by very high-level officers, not with possible wrongdoing by other, lower-level employees, and, second, that Congress did not want the Ethics Act mechanism to be triggered unless there was something substantial tying a particular high-level covered official to the alleged wrongdoing so that that covered official

---

**14.** Plaintiffs seem also to contend that litigation positions of the Department of Justice tend to show the existence of the claimed conspiracy, but obviously nothing can be made of the various positions, quite conventional though disap-

proved by plaintiffs, taken by the Department with respect to litigation—without some much more specific showing that the Department's litigation position was perverted by the claimed ulterior motivation.

was himself potentially guilty of a crime. The Ethics Act was not the means for impelling investigations of all criminal wrongdoing by federal employees or officers, but only of such personal wrongdoing by the designated officials. It is simply not enough that there may be reason to investigate lower-ranking federal personnel on a charge, specifically supported, that those lower-level employees, officers, or agents committed a federal crime. The Ethics in Government Act was not designed to cast *respondeat superior* responsibility on the designated officials, but rather to provide a particular mechanism for processing specific information that they themselves had personally committed a federal crime. Nor was the Act meant to open a facile device for invoking its refined and special procedures simply by adding unsupported generalities against covered officials to more specific charges against others.[15]

B. Like Attorney General Smith, Assistant Attorney General Reynolds was not in office before January 1981. He was not named as a defendant in *Waller v. Butkovich, supra.* The mandamus petition asserts only that, along with others, he is "actively, and consciously, concealing evidence from a federal grand jury which demonstrates that other agents of the Federal Executive Department are guilty of violating federal criminal civil rights laws." No specifics whatever are given. The considerations, discussed in Part IV, A, *supra,* which have led me to hold insufficient the information with respect to Mr. Smith apply equally or *a fortiori* to Mr. Reynolds.

C. FBI Director William Webster held office in 1979 at the time of the Greensboro

incident. The mandamus petition alleges that he "actively participated in the formulation and supervision of the criminal anti-civil rights program in which FBI operative [name of a person] instigated, planned, and led the physical assault upon the petitioners and their decedents—which conduct of William Webster constitutes a violation of federal criminal law...." The complaint in *Waller v. Butkovich, supra,* names William Webster as a defendant, describes him as Director of the FBI, and alleges that "as such [he] was responsible for devising, promulgating and implementing its policies." There is no other reference to Mr. Webster by name in that complaint though there are several references to all the defendants (over 70 individuals and some 10 organizational entities) as well as to the defendant federal personnel (more than 15, including alleged federal informants) and federal entities (4). Once again, there is no factual support or factual predicate for any inference of criminal conduct on Director Webster's part. I can see here, as is also the case with Attorney General Smith and Assistant Attorney General Reynolds, no specific reference to an "action, meeting, instruction, or conversation" (to use words of the government's brief) on the part of Webster from which a reasonable inference can be drawn of his possible participation in the claimed conspiracy.[16] His case does not differ from the other two except that he held office in 1979—and that single fact adds nothing to this case under the Ethics in Government Act.[17]

The heart of it all is that plaintiffs have proffered nothing but conclusory generalizations and their own unsupported suspi-

---

**15.** By way of caution, I add that I am applying the standard embodied in the Ethics Act, "specific information," not the criterion of "probable cause." Plaintiffs urge the use of the criterion announced, in the wholly different connection of a "stop and frisk," in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). On that, it is enough to say that *Terry v. Ohio* rejected any "inchoate and unparticularized suspicion or 'hunch,'" insisting instead on "specific reasonable inferences" drawn from relevant facts. 392 U.S. at 27, 88 S.Ct. at 1883.

**16.** In their Memorandum of Points and Authorities In Support of Plaintiffs' Motion for Summary Judgment in the District Court below, plaintiffs quoted from what appears to be an earlier version of the complaint in *Waller v. Butkovich,* but none of the quotations contains any factual or specific support for the charge of conspiracy against Director Webster personally.

**17.** Even as to the FBI as an organization, the District Court said below that "The exact role of the FBI in the Greensboro events is obscure," 557 F.Supp. at 1188 (memorandum opinion on Government's motion to dismiss).

cions against the three officials, and that is not enough to require the Attorney General to undertake a preliminary investigation under the Act. The order of the District Court should be reversed with directions to deny the petition for mandamus.[18]

BORK, Circuit Judge, concurring:

This is a case over which we have no jurisdiction: the Ethics in Government Act creates no private right of action to compel the Attorney General to conduct a preliminary investigation. We may not, therefore, reach the merits and inquire, as Judge Davis does, whether appellees supplied the Attorney General with information sufficiently specific to trigger a duty on his part to initiate a preliminary investigation.

Though he concedes that there are "substantial questions" about plaintiffs' standing to sue under the Act and about the judicial reviewability of the Attorney General's actions and determinations, Judge Davis chooses not to "reach or determine those issues." Davis op. at 1072. This leap over the question of jurisdiction to arrive at the merits carries him well beyond the boundaries of judicial authority. There being no jurisdiction, the pronouncements made on the merits are without warrant.[1]

Though I discuss only the absence of a private cause of action, the analysis below also indicates that plaintiffs lack standing to maintain this suit.[2] The question of whether a private cause of action is to be implied under a statute is primarily a question of congressional intent. *Borrell v. United States International Communications Agency,* 682 F.2d 981, 986 (D.C.Cir. 1982), and cases cited there. In determining that intent, it is helpful to place this case in its legal context.

In the district court, plaintiffs sought, and were granted, an extraordinary remedy. I do not refer to the nature of a writ of mandamus but to the fact that the mandamus was designed to control the law enforcement decisions of the Attorney General. Since the Attorney General is, in these matters, the delegate of the President, the mandamus purports to control the performance of the President's constitutional duties. Such an attempt, had Congress authorized it, would raise serious constitutional questions relating to the separation of powers. I do not undertake to decide the constitutional issue because it is not necessary to do so. What follows is intended merely to show the severity of the constitutional problem that would arise if it were shown that Congress intended to create a private cause of action. That is reason in itself not to imply such a cause of action unless it is very clear that Congress intended one. *See United States v. Clark,* 445 U.S. 23, 27, 100 S.Ct. 895, 899, 63 L.Ed.2d 171 (1980); *New York City Transit Authority v. Beazer,* 440 U.S. 568, 582 & n. 22, 99 S.Ct. 1355, 1364 & n. 22, 59 L.Ed.2d 587 (1979); *National Cable Tele-*

---

**18.** The court's disposition makes it unnecessary to discuss the cross-appeal which indisputably fails with the holding that the District Court went too far in ordering a preliminary investigation.

**1.** Fed.R.Civ.P. 12(h)(3) states unequivocally: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." But the requirement has deeper foundations. "Subject matter jurisdiction ... is an Article III as well as a statutory requirement; it functions as a restriction on federal power and contributes to the characterization of the federal sovereign." *Insurance Corp. of Ireland, Ltd. v. Campagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). The characterization of the federal sovereign includes limits to the powers of federal courts.

**2.** Subject to Article III considerations, plaintiffs have standing to sue under this Act only if Congress has created a legal right, "the invasion of which creates standing." *Linda R.S. v. Richard D.,* 410 U.S. 614, 617 n. 3, 93 S.Ct. 1146, 1148 n. 3, 35 L.Ed.2d 536 (1973), *quoted in Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 487–88 n. 24, 102 S.Ct. 752, 766, n. 24, 70 L.Ed.2d 700 (1982). Whether Congress has created that right turns on congressional intent, as does the existence of a private cause of action. The two inquiries merge. And, since my analysis of congressional intent demonstrates no intent to create a private remedy, plaintiffs have no standing to bring this suit.

*vision Ass'n v. United States,* 415 U.S. 336, 342, 94 S.Ct. 1146, 1149, 39 L.Ed.2d 370 (1974); *Crowell v. Benson,* 285 U.S. 22, 46, 62, 52 S.Ct. 285, 290, 296, 76 L.Ed. 598 (1932).

Article II, section 3, of the Constitution locates the law enforcement power in the President by providing that he "shall take Care that the Laws be faithfully executed." No power to enforce the laws is vested in Congress by Article I or in the courts by Article III. Yet plaintiffs' claim is that Congress, acting upon the Attorney General, has undertaken to control the law enforcement power of the President and has given courts authority to issue appropriate orders to that end at the behest of private persons. On the face of the Constitution, this would be a highly dubious attempt. Neither the Supreme Court nor any court of appeals, so far as I know, has ever countenanced such a suit. In fact, expressions of opinion and holdings have all run the other way.

In *United States v. Nixon,* 418 U.S. 683, 693, 94 S.Ct. 3090, 3100, 41 L.Ed.2d 1039 (1974), the Court accepted the general proposition that "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case." The Chief Justice's opinion cited the *Confiscation Cases,* 7 Wall. 454 (1869), in which the Supreme Court held that the Attorney General had complete discretion to ask dismissal of the government's appeal as well as to ask reversal of a decree in favor of the government, despite the objection of an informer who had, by statute, a monetary stake in the government's success in the cases. In *Linda R.S. v. Richard D.,* 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973), the Supreme Court held that the mother of an illegitimate child could not enjoin the local district attorney from refusing to prosecute the father of her child for nonsupport under a Texas criminal statute. The opinion stated that "[t]he Court's prior decisions consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution.... [T]hese cases ... demon-

strate that, in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Id.* at 619, 93 S.Ct. at 1149 (citations omitted). The Supreme Court has recently reaffirmed this principle in *Leeke v. Timmerman,* 454 U.S. 83, 86–87, 102 S.Ct. 69, 70–71, 70 L.Ed.2d 65 (1981) (per curiam).

The en banc Fifth Circuit held in *United States v. Cox,* 342 F.2d 167, *cert. denied,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1981) (per curiam).

The en banc Fifth Circuit held in *United States v. Cox,* 342 F.2d 167, *cert. denied,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965), that a district court lacked the power to compel the United States Attorney to sign indictments in accordance with the wishes of a grand jury.

> Although as a member of the bar, the attorney for the United States is an officer of the court, he is nevertheless an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular case. It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions.

342 F.2d at 171 (footnote omitted). The law in this circuit fully supports that view. As Chief Justice (then Circuit Judge) Burger wrote:

> Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought.

> The United States Attorney, under the direction and control of the Attorney General, is the attorney for the Executive, charged with faithful execution of the laws, protection of the interests of

the United States, and prosecution of offenses against the United States. As such, he must have broad discretion.

. . . .

We do our assigned task of appellate review best if we stay within our own limits, recognizing that we are neither omnipotent so as to have our mandates run without limit, nor omniscient so as to be able to direct all branches of government. The Constitution places on the Executive the duty to see that the "laws are faithfully executed" and the responsibility must reside with that power.

*Newman v. United States*, 382 F.2d 479, 480, 482 n. 9 (D.C.Cir.1967) (footnote omitted). Many more cases demonstrate that courts have not the power to order prosecutions. *E.g., Inmates of Attica Correctional Facility v. Rockefeller*, 477 F.2d 375, 381 (2d Cir.1973); *Peek v. Mitchell*, 419 F.2d 575, 577–78 (6th Cir.1970); *Powell v. Katzenbach*, 359 F.2d 234, 234–35 (D.C.Cir. 1965), *cert. denied*, 384 U.S. 906, 86 S.Ct. 1341, 16 L.Ed.2d 359 (1966); *Moses v. Kennedy*, 219 F.Supp. 762, 764–65 (D.D.C. 1963), *aff'd sub nom. Moses v. Katzenbach*, 342 F.2d 931 (D.C.Cir.1965); *Pugach v. Klein*, 193 F.Supp. 630, 634 (S.D.N.Y. 1961). It would expand this opinion needlessly to discuss them all.

It may be thought that neither the relief granted by the district court nor that sought by the plaintiffs falls within the principle of Executive control of decisions to prosecute. The district court ordered the Attorney General to initiate a preliminary investigation; the plaintiffs seek to compel an application for the appointment of an independent counsel. The distinction between these remedies and the principle discussed above has no significance, however. The only purpose of the preliminary investigation under the Ethics Act is to enable a report to the special division of this court about the need or the lack of a need for the appointment of independent counsel. The preliminary investigation is thus the first stage of the prosecutorial process and the district court has undertaken to control that stage.

Plaintiffs would have the district court control the next stage as well ordering the Attorney General to apply to the special division of this court for the appointment of an independent counsel. It is no answer to say that the courts, under either form of relief, would not control the final prosecutorial decision since that would be made by the independent counsel. There are at least two flaws in that reasoning. The first is that the principle of Executive control extends to all phases of the prosecutorial process. Thus, were this a case about an ordinary prosecution under a federal criminal statute, a plaintiff could not escape the principle discussed by demanding only an order that the Attorney General present facts to a grand jury but leaving the decision whether to sign any indictment to him. Second, if private plaintiffs have the legal ability to require an investigation of criminal charges, it is difficult to understand by what principle they could be denied a cause of action to compel the independent counsel to prosecute if that counsel had sufficient evidence to do so under the policies of the Department of Justice, which the Act requires him to follow. 28 U.S.C. § 594(f) (1982). If the execution of the laws is lodged by the Constitution in the President, that execution may not be divided up into segments, some of which courts may control and some of which the President's delegate may control. It is all the law enforcement power and it all belongs to the Executive. It may be that answers can be given that avoid or modify these traditional views. No such answers have been offered in this case, however.

Given the area of constitutional doctrine and tradition in which this case falls, therefore, we may not lightly impute to Congress an intent to remove prosecutorial discretion from the Executive and place it in courts and private parties. Before courts decide the constitutionality of such a transfer of the law enforcement power, it must be very clear that Congress has attempted it. Plaintiffs' showing on that score does not begin to approach the requisite clarity. In fact, the conventional indicia of legislative intent show that Congress did not cre-

ate but withheld any private right to enforce the Ethics Act.

The text of the statute, the most important aid to interpretation, is persuasive on this point. There is no explicit creation of a cause of action, and other features one would expect to find if a cause of action were intended are conspicuously absent. Thus, for example, the Act establishes no mechanism for considering citizen complaints, nor does the Act require the Attorney General to make his findings public or to report them to a complaining citizen. The text contains nothing that even suggests a private cause of action.

To the contrary, by conferring very broad discretion upon the Attorney General, the text strongly indicates that private remedies are precluded. For example, the statute expressly commits the scope of the preliminary investigation to the Attorney General's judgment. Prior to the 1983 amendments, section 592(a)(1) provided that, upon receipt of "specific information" that a covered official had engaged in criminal conduct, the Attorney General shall conduct "such preliminary investigation of the matter *as the Attorney General deems appropriate.*" 28 U.S.C. § 592(a)(1) (Supp. V 1981) (emphasis added). And section 592(b)(1) insulated from review the Attorney General's determination "that the matter is so unsubstantiated that no further investigation or prosecution is warranted." 28 U.S.C. § 592(b)(1) (Supp. V 1981) (Providing that, upon such a finding, "the division of the court shall have no power to appoint a special prosecutor.").

The 1983 amendments to the Ethics Act reinforce and, if anything, expand the Attorney General's discretion at the preliminary investigation stage. For example, section 592(a)(1) was amended to provide that

[u]pon receiving information *that the Attorney General* determines is sufficient to constitute grounds to investigate that any person covered by the Act has engaged in [criminal] conduct ..., the Attorney General shall conduct ... such

preliminary investigation as the Attorney General deems appropriate.

28 U.S.C. § 592(a)(1) (1982) (emphasis added). Congress also added two factors for the Attorney General to consider "[i]n determining whether grounds to investigate exist,"—credibility and specifically. *Id.* This "broad language" confirms that the Attorney General, as Senator Rudman recognized, "becomes the gate that either opens or closes, and we have to have a great deal of trust in him to do that." *Ethics in Government Act Amendments of 1982: Hearings on S. 2059 Before the Subcomm. on Oversight of Government Management of the Senate Comm. on Governmental Affairs,* 97th Cong., 2d Sess. 50 (1982). It would be anamolous for this court to hold that Congress intended, *sub silentio,* to provide for judicial oversight of the Attorney General's decisions via a private right of action at the same time Congress was vesting the Attorney General with such wide discretion as to the scope of the preliminary investigation, as well as the determination of whether to conduct any investigation at all.

Neither does the legislative history of the Act support plaintiffs' contentions. The question of private enforcement of the Act was, as the district court pointed out, a subject of "considerable debate ... [d]uring the legislative process." *Nathan v. Smith,* 557 F.Supp. 1186, 1188 (D.D.C. 1983). At least two of the Special Prosecutor bills introduced in the Ninety-fourth Congress expressly provided for private enforcement. *See* H.R. 11476, 94th Cong., 2d Sess. (1976); S. 495, 94th Cong., 2d Sess. (1976); *Provision for Special Prosecutor: Hearings on H.R. 14476, H.R. 11357, H.R. 11999, H.R. 8281, H.R. 8039, H.R. 15634 and Title I of S. 495 Before the Subcomm. on Criminal Justice of the House Comm. on the Judiciary,* 94th Cong., 2d Sess. 27, 70 (1976) (describing H.R. 14476 and S. 495 provisions on private enforcement). The Attorney General, for one, strongly objected to that provision, and neither of the bills

were reported out of the House Judiciary Committee.[3]

None of the Special Prosecutor bills introduced in the Ninety-fifth Congress—the Congress which eventually passed the Ethics Act—provided for private enforcement. Some opposed the bill because of this omission. *See Public Officials Integrity Act of 1977: Hearings on S. 555 Before the Senate Comm. on Governmental Affairs,* 95th Cong., 1st Sess. 39 (1977) (statement of Livingston Hall that court review of the Attorney General's decisions is necessary; H.R.Rep. No. 1307, 95th Cong., 2d Sess. 23 (1978); 124 Cong.Rec. 36,463 (1978) (remarks of Rep. Wiggins). The bills' supporters, however, believed that "if [the Attorney General] does not respond to a situation that appears to be appropriate," members of the House Judiciary Committee can request a special prosecutor under 28 U.S.C. § 595(e), thereby bringing "the political process" into play. 124 Cong.Rec. 36,-464 (1978) (remarks of Rep. Mann). *See also* H.R.Rep. No. 1307, *supra,* at 7 n. 19 ("[T]he authority given to Members of Congress by § 595(e) serves as an additional check upon the possible abuse of [the Attorney General's] authority."). Since courts only infer private remedies in "atypical situation[s]," *Cannon v. University of Chicago,* 441 U.S. 677, 717, 99 S.Ct. 1946, 1968, 60 L.Ed.2d 560 (1979), we must be extremely reluctant to add a private right of action to a statute when Congress specifically contemplated, but did not enact, the same addition. *See* 2A G. Sands, *Sutherland Statutory Construction* § 48.18 (1972). *Cf. Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 21–22, 100 S.Ct. 242, 248, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 574, 99 S.Ct. 2479, 2488, 61 L.Ed.2d 82 (1979).

The district court inferred a private right to sue from the structure and purpose of the Ethics Act.[4] The court was concerned that the Act would have no "meaning at all" without a private right of action, 557 F.Supp. at 1189, and refused "to declare that the Ethics in Government Act is merely a pious statement of pure political import." *Id.* at 1190. *See Banzhaf v. Smith,* 588 F.Supp. 1489, 1495–96 (D.D.C.1984); *Dellums v. Smith,* 573 F.Supp. 1489, 1497 (N.D.Cal.1983). But the fact that a particular statute does not create a judicially-enforceable private right of action does not, by any means, render that statute meaningless or without utility. The Ethics Act is given meaning by the Attorney General's sworn obligation to uphold the law, as well as by the congressional oversight built into the Act. 28 U.S.C. § 595 (1982). The Act requires, among other things, that the independent counsel send Congress periodic reports about his activities, 28 U.S.C. § 595(a), and "advise the House of Representatives of any substantial and credible

---

**3.** Perhaps the Committee was persuaded by comments like those of then-Attorney General Edward H. Levi, who strongly criticized the private enforcement approach on grounds of policy.

> This procedure enables any individual to convert a private allegation against a high Government official into [a] highly publicized investigation. Charges of this sort could well become the natural corollary and complement to most civil suits involving Government officials. The fact that such charges would be disseminated and dignified by the process established by the bill would inevitably encourage those who wish to use it for partisan or other improper purposes.
>
> In enabling the criminal investigative process to be transformed into a media event each time high State or Federal officials or members of Congress are involved, the bill casts aside one of the most decent traditions of our criminal law system. This procedure for spreading improper charges contributes to public attitude of cynicism and distrust of Government officials—again a problem which the bill is intended to help solve.

*Provision for Special Prosecutor: Hearings on H.R. 14476, H.R. 11357, H.R. 11999, H.R. 8281, H.R. 8039, H.R. 15634 and Title I of S. 495 Before the Subcomm. on Criminal Justice of the House Comm. on the Judiciary,* 94th Cong., 2d Sess. 27, 34 (1976).

**4.** Two other district courts have faced this question. *Banzhaf v. Smith,* 588 F.Supp. 1489 (D.D.C.1984); *Dellums v. Smith,* 573 F.Supp. 1489 (N.D.Cal.1983). The court in each of those cases relied upon the reasoning of the district court here, and each came to the same conclusion. *Banzhaf v. Smith,* at 1494–95; *Dellums v. Smith,* 573 F.Supp. at 1495–97.

**1082**

evidence ... that may constitute grounds for an impeachment." 28 U.S.C. § 595(c). The Act also provides that "[a] majority of majority party members or a majority of all non-majority party members of the Committee on the Judiciary of either House of Congress may request in writing that the Attorney General apply for the appointment of a [sic] independent counsel." 28 U.S.C. § 595(e). The Attorney General is required to respond to this request in writing. *Id.*

Experience demonstrates that the Act has in fact been more than "a pious statement of pure political import," even without private enforcement. Since the statute was enacted, its procedures have been invoked at least nine times by various Attorneys General. *See generally* Kramer & Smith, *The Special Prosecutor Act: Proposals for 1983*, 66 Minn.L.Rev. 963, 968–69 (1982). The Attorney General has asked a special division of this court to appoint independent counsel at least three times.[5] These requests demonstrate that Congress need not have created a private judicial remedy to make the Ethics Act effective.

The district court's conclusion also rests on an inference from the statutory provision expressly precluding judicial review where the Attorney General applies for independent counsel. It does not follow, however, that preclusion of judicial review in one circumstance means that judicial review is created wherever not expressly barred. That inference would be weak under any circumstances; it is especially so here because it ignores the difference between review of a decision *to* enforce a criminal statute and review of a decision *not* to enforce a criminal statute. Thus, though appellate courts have never authorized review of a prosecutor's refusal to proceed, they have upheld review of his

decision to prosecute when that would injure a person's rights. *See, e.g., Blackledge v. Perry*, 417 U.S. 21, 26–29, 94 S.Ct. 2098, 2101–2103, 40 L.Ed.2d 628 (1974) (holding that prosecutor's decision to bring felony charges after defendant exercised state right of trial de novo violated due process). Congress' choice to forbid an alleged wrongdoer from challenging the Attorney General's decision to request the special division of this court to appoint an independent counsel apparently was intended to prevent one who might be investigated from paralyzing that process with preliminary litigation. That Congress made that eminently sensible decision does not in any way imply that Congress envisioned private enforcement actions to require the initiation of the prosecutorial process by individuals supplying information.

Everything I have examined—the constitutional context, the statutory text, and the legislative history—demonstrate that the Ethics Act does not create a cause of action. Thus, we may not decide the merits of this case because we have no jurisdiction to entertain it.

HARRY T. EDWARDS, Circuit Judge, concurring:

I concur solely in the result reached in this case. On the facts before us, it seems clear to me that the judgment in favor of plaintiffs should be reversed.

---

**5.** Government counsel said at oral argument that various Attorneys General had filed 13 reports with the special division of this court, and had made three requests for independent coun-

sel. Since oral argument, the provisions of the Act have been invoked at least once more with the appointment of an independent counsel.