James T. FINLEN and Ruth Finlen, his wife, Plaintiffs,

v.

Frank J. HEALY, District Director of Internal Revenue for the District of Montana, Defendant.

Nos. 798 and 799.

United States District Court
D. Montana,
Helena Division.

Aug. 23, 1960.

William M. Kirkpatrick, Butte, Mont., William G. Baucus, John D. Stephenson, Great Falls, Mont., and P. L. MacDonald, Butte, Mont., for plaintiffs.

Krest Cyr, U. S. Atty., Butte, Mont., for defendant.

BOLDT, District Judge.

These cases involve the application of 26 U.S.C. § 704(e) (§ 704(e) Internal Revenue Code of 1954) to the family partnership arrangement of plaintiffs and their four children in a mining business venture. The Commissioner refused to recognize the purported partnership as valid for tax purposes and consequently treated the partnership income paid to the children as income of plaintiffs and adjusted the tax liability of plaintiffs accordingly. By these actions plaintiffs seek refund of the part of their taxes for 1954 and 1955 assessed and paid pursuant to such ruling of the Commissioner. Completion of administrative procedures prior to institution of these actions is admitted. Jurisdiction vests in this court under 28 U.S.C. § 1346.

Briefly stated, the following general fact pattern is shown by the evidence:

Prior to the senior Mr. Finlen's retirement in 1958, plaintiff husband and wife and their four children resided in Butte, Montana. Mr. Finlen was engaged in the active practice of law and had substantial business investments. One of his interests was a 30% stock holding in the F. & S. Contracting Company, a Montana corporation engaged in the general contracting business. Twenty percent of the F. & S. stock was owned per-

sonally by Mrs. Finlen, and the balance (except for qualifying shares) was owned by L. H. Sheridan and Sallie Sheridan, husband and wife, who are not related by blood or marriage to the plaintiffs.

In 1949 the F. & S. corporation became interested by joint venture with one Don Hunter in the exploration of mining possibilities of certain barite properties. In December 1951, following Mr. Hunter's death, the corporation acquired the entire interest in the properties. During 1952 and early 1953 F. & S. proceeded with development of the properties by constructing a mill and other buildings and by purchasing milling and mining equipment. On March 1, 1953 the corporation had an investment of about $145,000 in the venture.

The interested parties decided the barite properties should be transferred to and operated by a partnership. It was agreed the members of the partnership and their interests therein would be as follows: L. M. Sheridan (husband) 25%; Sallie Sheridan (wife) 20%; James P. Murphy (brother-in-law of Sheridan) 10%; James T. Finlen (husband) 16¼%; Ruth Finlen (wife) 16-¼%; James T. Finlen, Jr. (son) 6¼%; Ruth M. Finlen (daughter) 6¼%.

A written partnership agreement was entered into on March 1, 1953 and a certificate of fictitious name (Finlen and Sheridan Mining Co.) was filed for record and published as required by Montana law. On the same day plaintiffs, with oral approval of the other partners, assigned a 6¼% interest in the partnership to each of their two minor children William M., then aged 17, and Donna M. then aged 14. Because of the possible reluctance of third parties to deal with minors, each of the two minor children was made a limited partner as assignee of a partnership interest. The assignments, validly accomplished under applicable state law, were absolute and irrevocable, thereby giving the minor children the same legal status as the two older children with respect of sharing in profits and in responsibility for liabilities of the partnership.

The original capital of the partnership was cash in the sum of $20,000, of which $9,000 was contributed by the Sheridan interests, $9,000 by the Finlen interests and $2,000 by James P. Murphy. James T. Finlen Sr. advanced the $9,000 for the interests of all members of his family and in return therefor received from his wife a promissory note for $2,000 and from each of his children a promissory note for $1,250. These non-interest bearing notes represented the proportionate share of each family member in the investment and subsequently were repaid out of partnership profits.

Additional capital for the partnership was obtained by two principal transactions: (1) On the date of the formation of the partnership it purchased assets of the F. & S. corporation for approximately $145,000. $90,000 of the purchase price was paid by notes secured by a mortgage on partnership assets and the $55,000 balance was carried in the partnership books as an account payable. The notes and account ultimately were paid in full. (2) Shortly after formation of the partnership, $100,000 was obtained by an unsecured loan to the senior Finlens, the Sheridans, and Mr. Murphy from the Northwestern Bank of Minneapolis, Minnesota. Mr. and Mrs. Finlen received a note for $6,250 from each of the children as the share of each in the $100,000 contribution to capital effected by the bank loan, which notes later were paid in full. While the bank loan was personal to Murphy, the Sheridans and the senior Finlens, the whole of repayment was made by the partnership, the partners' accounts being charged with the proportionate shares of the repayment.

The barite operations, while initially speculative, eventually proved to be successful and distributions of substantial profits were made from time to time to all partners and assignees. In July, 1956 the partnership barite properties and operations were sold to the National Lead Co. The instruments of transfer

were executed by, and the proceeds of the sale distributed to, all of the partners and assignees. Thereafter the partnership was finally and formally dissolved by appropriate legal instruments.

■ The basic requirements for recognition of a partnership as bona fide for tax purposes are: (1) the existence of genuine intent on the part of the participants to actually carry on business together as partners, and (2) conduct of the business in accordance therewith. Family partnerships are particularly scrutinized for existence of the requisite intent and conduct because of the possibility that those closely related in kinship may attempt to secure tax advantages by income splitting through the operation of profitable business enterprises in partnership form although they are not actually such in substance.

■ In 1951 Congress enacted particular provisions applicable to family partnerships in which capital is a material income producing factor; these are now contained in 26 U.S.C. § 704(e) (§ 704(e) of the Internal Revenue Code of 1954). Thereunder income from a capital interest in a bona fide partnership is taxable to the partner even though his interest was acquired as a gift, regardless of the motive prompting the gift, and whether or not the partnership benefits from the donee's services or other participation in the partnership.[1] Under the statute, non bona fide partnerships are not recognized for tax purposes and under Sec. 704(e)(2) provision is made for reallocation of partnership income paid to purported but not bona fide partners.

Under Sec. 704(e)(3) a partnership interest purchased by one member of a family from another must be considered as acquired by gift from the seller. Therefore, the partnership interests of the Finlen children are treated herein as acquired by gift and Mr. Finlen Sr. is referred to as donor and his children as donees.

■ For tax recognition a limited partnership must be validly organized and conducted under state law and the interest of the donee must not be controlled by the donor or subject to abnormal transfer restrictions. Recognition of the interest of a minor child, of whatever age, in a partnership largely depends on the actual maturity of the individual child and his competence to manage his property and to participate in partnership activities. Generally when the child does not have such capacity his partner status will not be recognized unless an independent fiduciary controls the partnership interest for the child under judicial supervision. (See 3 P–H 1960 Federal Taxes V15,510–15,-510A).

■ Whether a purported ownership of a capital interest in a partnership is bona fide and whether the purported partner has actual dominion and control over such interest must be ascertained from all the facts and circumstances shown by the evidence in each particular case. The bona fides of the purported ownership is not shown simply by the fact that legally sufficient documents of transfer have been executed, nor by any other formal or specific test, such as the existence or nonexistence of a business purpose for the partnership. Isolated circumstances tending one way or the other are not necessarily determinative; rather, bona fides must be determined in the light of all of the facts and circumstances taken as a whole.

■ The facts found in each particular case with respect of the following matters, as is recognized in IRS regulations, comprise the principal basis upon which the determination of bona fides must rest:

1. Retention of direct controls by donor over (a) income distribution, (b) assets essential to the partnership business, (c) management powers beyond those common in ordinary partnership relationship, or (d) restrictions on donee

---

1. See: Sen.Rep. No. 781, 82nd Cong., 1st Sess., § VI A 7 (1951) H.R.Rep. No. 586, 82nd Cong., 1st Sess., VM (1951).

in the sale or liquidation of his interest without financial detriment.

2. Indirect controls, exercised by donor through a separate business organization, estate, trust, individual, or by familial relationship.

3. Participation in management or performance of services by donee.

4. Manner of partnership income distributions, to whom paid and by whom used and controlled.

5. Conduct of partnership business as to: (a) compliance with local partnership, fictitious names and business registration statutes; (b) control of business bank accounts; (c) recognition of donee's rights in distributions of partnership property and profits; (d) recognition of donee's interest in business contracts, insurance policies, and in litigation and other matters affecting business; (e) the existence of written agreements, records, or memoranda, contemporaneous with the taxable year or years concerned, establishing the nature of the partnership agreement and the rights and liabilities of the respective partners; and (f) filing of partnership tax returns as required by law.

■ Each of the above summarized propositions has been separately and specifically considered in relation to the evidence in the present case. Detailed analysis and discussion of the facts found would require a greatly extended statement, possibly of interest in the particular litigation but of no other value; therefore, only ultimate conclusions will be stated.

Aside from the suspicion attaching to family partnerships in general, the only important considerations tending to negative recognition of the partnership in the instant case are the age and inexperience of the children, and the absence of a business purpose of benefit to the partnership for participation therein by the children. As to some of the enumerated factors the evidence does not support a finding one way or the other. The findings as to all other factors strongly indicate bona fides of the partnership. Particularly persuasive to that effect is the complete lack of retention or exercise of controls, direct or indirect, by the donor over the donees' interests, or over the use of income derived therefrom; the absolute and unlimited vesting in donees of ownership of their interests with the advantages and disadvantages attaching thereto; and the meticulous conduct of the business in a manner wholly consistent with, and in no material respect inconsistent with, customary practices followed by a normal partnership composed of wholly unrelated persons.

In the situation thus summarized, appraisal of the character, integrity and motives of plaintiffs and their children, particularly as related to the transactions in question, becomes of special importance. The court has no doubt whatever but that in every particular each of the Finlens honestly, genuinely and without reservation, intended to engage in a bona fide partnership without limitation either as to benefits or liabilities of any partner or assignee. The court is further satisfied that avoidance of tax liability was no impelling part of the intent or motivation of the senior Finlens in creating the partnership. Their principal thought and intent was to make the children bona fide partners and thereby provide them with the education and experience to be derived through participation in a substantial business venture, initially of promise but without certainty of success.

On consideration of all the pertinent facts and circumstances shown by the evidence and on the entire record, the refusal of the Commissioner to recognize Finlen and Sheridan Mining Co. as a bona fide partnership valid in all particulars now in issue cannot be sustained. Tax refund as sought by plaintiffs is required under applicable law and the controlling facts as found by the court. Findings of fact, conclusions of law and judgment to such effect may be presented at the convenience of counsel.