[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10391
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-22343-DLG


NELSON MORALES,

                                                    Plaintiff-Appellant,

versus


UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA,
UNITED STATES ATTORNEY FOR THE
SOUTHERN DISTRICT OF FLORIDA,

                                                    Defendants-Appellees.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 15, 2014)

Before HULL, WILSON, and FAY, Circuit Judges.

PER CURIAM:

Petitioner Nelson Morales appeals the dismissal of his petition for a writ of mandamus compelling the presentation of evidence to a special grand jury. The district court dismissed the petition for lack of subject matter jurisdiction and for failure to state a claim. Because we determine Morales lacks the standing necessary for us to adjudicate this claim, we affirm the district court's dismissal.

## I. BACKGROUND

We review the prior prosecutions before turning to Morales's claim.

### A.  The 1996 Murders

On February 24, 1996, the Cuban Air Force shot down two civilian planes in international airspace. Four men, all members of the Miami-based Cuban exile group Brothers to the Rescue ("BTTR"), were killed in the incident. The murders drew substantial media attention and widespread condemnation of the Cuban government. The shoot-down also resulted in civil litigation and criminal prosecutions.

In 1997, the estates of three of the victims, all United States citizens, prevailed in a civil suit against the Republic of Cuba and the Cuban Air Force. Alejandre v. Republic of Cuba, 996 F. Supp. 1239 (S.D. Fla. 1997). The cause of action was based on provisions of the Foreign Operations, Export Financing, and

2

Related Programs Appropriations Act of 1996, Pub. L. No. 104-208, § 589, 110 Stat. 3009 (1996) (codified at 28 U.S.C. § 1605), which allows money damages against foreign states for the personal injury or death of American citizens, subject to additional restrictions.  The estates were awarded a judgment of over $187 million dollars.  Alejandre, 996 F. Supp. at 1253.  The order accompanying the final judgment quoted at length from the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996. Id. at 1247.  That act of Congress, responding explicitly to the shoot-down, stated that "[t]he [actions] chosen by Fidel Castro . . . [were] a blatant and barbaric violation of international law and tantamount to cold-blooded murder." 22 U.S.C. § 6046.  Moreover, it called on President Clinton "to seek, in the International Court of Justice, indictment for this act of terrorism by Fidel Castro." Id.

Criminal prosecutions followed, beginning in 1998.  A federal grand jury indicted five Cuban agents for their involvement in the incident. United States v. Campa, 419 F.3d 1219, 1222-23 (11th Cir. 2005), rev'd en banc, 459 F.3d 1121 (11th Cir. 2006).  One was charged with and convicted of conspiracy to murder the four BTTR members. Id.  Other defendants were charged with and convicted of a range of offenses, including espionage. Id.  This Court, sitting en banc, affirmed those convictions of the Cuban agents. United States v. Campa, 459 F.3d 1121, 1126 (11th Cir. 2006) (en banc) (rejecting venue objections); see also United States

3

v. Campa, 529 F.3d 980, 987 (11th Cir. 2008) (subsequent panel opinion affirming all defendants' convictions over other objections and remanding for resentencing as to three defendants).

These were not the only criminal prosecutions. In 2003, a federal grand jury indicted three additional defendants–the head of the Cuban Air Force and the two fighter pilots who actually shot down the aircraft–with murder and conspiracy to commit murder. These defendants remain fugitives.

## B. The Presentation of Evidence to a Grand Jury

That factual background brings us to the substance of this appeal. Petitioner Nelson Morales, the brother of Pablo Morales, a victim of the 1996 BTTR incident, seeks to compel the United States Attorney for the Southern District of Florida (or, in the alternative, the United States District Court for the Southern District of Florida) to present evidence to a grand jury implicating Fidel Castro and Raul Castro in the murders of the BTTR men.

Specifically, Morales wants the grand jury to be made aware that Fidel and Raul Castro "claimed responsibility over 17 years ago for ordering the murders of the four BTTR men." The evidence Morales seeks to have presented includes: (1) a Time Magazine interview from March 11, 1996, in which Fidel Castro stated that he "take[s] responsibility for what took place"; (2) Fidel Castro's statement, in the same interview, that Raul Castro participated in the decision to attack the BTTR

4

planes; (3) Raul Castro's recollection, in an interview with Cuban journalists on June 21, 1996, of a military meeting prior to the incident in which he agreed that it may be necessary to "shoot [the BTTR men] down in the ocean when they appear"; and (4) a September 3, 1996 interview of Fidel Castro by Dan Rather in which Castro acknowledged that instructions were given to the Cuban pilots, who "had the authority" to shoot down the planes.  In that interview, Fidel Castro repeated his earlier statement, saying: "I take responsibility for it."

Because Fidel and Raul Castro have never been indicted for the murders of the BTTR men, Morales seeks to compel the presentation of the above-described evidence as well as "any evidence in [the U.S. Attorney's] possession, or previously submitted to any grand jury, which implicate the Castro brothers in the deaths of the BTTR men."

## C.  The Claim Under 18 U.S.C. § 3332(a)

Morales's mandamus action is based on 18 U.S.C. § 3332(a).  Morales argues that § 3332(a) guarantees that any person, such as Morales, can require the U.S. Attorney to present evidence of a federal crime to a special grand jury.[1]  The § 3332(a) statute provides that "[i]t shall be the duty of each such grand jury impaneled within any judicial district to inquire into offenses against the criminal

---

[1] See 18 U.S.C § 3331(a) ("[E]ach district court which is located in a judicial district containing more than four million inhabitants . . . shall order a special grand jury to be summoned at least once in each period of eighteen months unless another special grand jury is then serving.").

laws of the United States alleged to have been committed within that district." 18 U.S.C. § 3332(a).  Next, the statute says that "[s]uch alleged offenses may be brought to the attention of the grand jury by the court or by any attorney appearing on behalf of the United States for the presentation of evidence." Id.

The next sentence in the § 3332(a) statute is the basis of Morales's claim.  It says that "[a]ny such attorney receiving information concerning such an alleged offense from any other person shall, if requested by such other person, inform the grand jury of such alleged offense, the identity of such other person, and such attorney's action or recommendation." Id. (emphasis added).  From this language, Morales asserts that § 3332(a) gives him a statutory right to require the U.S. Attorney to present information "concerning [] an alleged offense" received from any person.

## D.  The Petition for a Writ of Mandamus and Proceedings Below

On July 2, 2013, Morales filed a petition for a writ of mandamus in the District Court for the Southern District of Florida, naming both the U.S. Attorney and the district court as respondents.  Morales's mandamus petition alleges attorney Kendall Coffey made a request on April 14, 2010, that the U.S. Attorney present the above evidence to a special grand jury.  The petition itself nowhere alleges that Morales ever made a request personally.

6

On September 13, 2013, the U.S. Attorney filed a motion to dismiss. **(Doc. 13)** The U.S. Attorney argued that the petition should be dismissed for lack of subject matter jurisdiction because Morales did not have standing to request the relief sought and because his claim was constitutionally unripe. The U.S. Attorney also argued that, as a matter of law, Morales's mandamus petition failed to state a claim for relief.

On October 22, 2013, Morales responded to the motion to dismiss. The response argued principally that § 3332(a) confers a legal right that Morales merely seeks to enforce through this mandamus action. The response also attempted to introduce a new factual allegation. In a footnote, Morales stated that Coffey appeared at the 2010 meeting "for the Morales family (and others), including his mother."[2] After establishing, in his view, Coffey's "representative status," Morales hedged, requesting leave to amend his petition if the petition as written was "deemed not to sufficiently identify Morales." He filed no separate motion for leave to amend in the district court.

The district court determined it was without subject matter jurisdiction to hear the claim and, on December 27, 2013, granted the motion to dismiss. The district court found: (1) that Morales lacked standing to invoke the power of the

---

[2] We acknowledge the U.S. Attorney's defense that the 2010 request should not be considered, as no special grand jury existed in the district at the time the request was made, as well as Morales's response that the U.S. Attorney's failure to call a special grand jury as required by 18 U.S.C. § 3331 should bar the U.S. Attorney from asserting such a defense. As we determine Morales fails to establish standing regardless, we need not decide these issues.

courts; (2) that his claim was constitutionally unripe because of his failure to make a specific request of the U.S. Attorney; and (3) that his claim failed as a matter of law for several reasons.

Morales timely filed a notice of appeal.

## II. STANDARD OF REVIEW

We review de novo a district court's determination of whether it has subject matter jurisdiction. Gupta v. McGahey, 709 F.3d 1062, 1064-65 (11th Cir. 2013), cert. denied, 134 S. Ct. 2840 (2014).  "[S]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims, and we review the district court's conclusion on this question de novo." Dillard v. Chilton Cnty. Comm'n, 495 F.3d 1324, 1330 (11th Cir. 2007) (quotation marks omitted).

We review for abuse of discretion a district court's denial of a petition for a writ of mandamus. Davis v. United States, 558 F. App'x 898, 900 (11th Cir. 2014) (per curiam) (unpublished) (citing Schlagenhauf v. Holder, 379 U.S. 104, 111 n.8, 85 S. Ct. 234, 239 n.8, (1964) (referring to mandamus as "generally a matter of discretion")).

## III. DISCUSSION

Morales petitions for a writ of mandamus that would compel either the U.S. Attorney or the district court to perform a specific act. See 28 U.S.C. § 1361 ("The

8

district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."). Mandamus is appropriate only where: (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy is available. Cash v. Barnhart, 327 F.3d 1252, 1258 (11th Cir. 2003). "It is hornbook law that mandamus is an extraordinary remedy which should be utilized only in the clearest and most compelling of cases." Carter v. Seamans, 411 F.2d 767, 773 (5th Cir. 1969).[3]

Before we consider the merits of Morales's petition, we first must determine if Morales has standing to "invoke the power of the federal courts." Steele v. Nat'l Firearms Act Branch, 755 F.2d 1410, 1413 (11th Cir. 1985). "This is the threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 2205 (1975); see also Linda R.S. v. Richard D., 410 U.S. 614, 616, 93 S. Ct. 1146, 1148 (1973) ("Before we can consider the merits of appellant's claim or the propriety of the relief requested, however, appellant must first demonstrate that [he] is entitled to invoke the judicial process."). "One element of the case-or-controversy requirement is

---

[3] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

9

that plaintiffs must establish that they have standing to sue." Clapper v. Amnesty

Int'l USA, 568 U.S. ___, 133 S. Ct. 1138, 1146 (2013) (quotations omitted).

To establish standing, Morales "bears the burden to show (1) an injury in

fact, meaning an injury that is concrete and particularized, and actual or imminent,

(2) a causal connection between the injury and the causal conduct, and (3) a

likelihood that the injury will be redressed by a favorable decision." CAMP Legal

Def. Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1269 (11th Cir. 2006) (quotation

marks omitted).[4]  "A proper deference to the Constitution's separation of powers

means that a court may only reach the merits of those cases that present concrete

and immediate injury." Elend v. Basham, 471 F.3d 1199, 1210 (11th Cir. 2006).

For several reasons, Morales's mandamus petition fails to allege a concrete

and particularized injury, and thus Morales lacks standing.  First, Morales's

petition does not allege denial of any personal request by him that information be

presented to a grand jury regarding the Castro brothers involvement in the 1996

BTTR shoot-down. See Zaleski v. Burns, 606 F.3d 51, 52 (2d. Cir. 2010) (stating

that "failure to make such a request [of the U.S. Attorney] would be fatal to

---

[4] Where, as here, the defendant challenges standing via a motion to dismiss, "both trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 806 (11th Cir. 1993) (quotations omitted).  The trial court, even at the motion to dismiss stage, "is not restricted to the face of complaint—it is free to rely on affidavits submitted by the plaintiff in support of the complaint." Id.  Before this Court, standing "must affirmatively appear in the record." Id. (quotation omitted).

[petitioner's] claim of standing."). Second, even if we accept Morales's allegation that Coffey's 2010 meeting with and request to the U.S. Attorney's Office was on Morales's behalf, Morales's petition still fails to allege "injury in fact."[5]

To show an "injury in fact," Morales argues (1) that § 3332(a) gives him an implied private right of action to compel the U.S. Attorney to present evidence, and (2) that the U.S. Attorney's failure to present such information on request violates Morales's legal rights. Because Morales has no such private right of action, he has no injury and thus no standing.

The problem for Morales is the text of § 3332(a) nowhere creates a private right of action, express or implied, against the U.S. Attorney or the district court. "[P]rivate rights of action to enforce federal law must be created by Congress" rather than by the federal courts. Alexander v. Sandoval, 532 U.S. 275, 286, 121 S. Ct. 1511, 1519 (2001). We look to whether the text of the statute itself clearly "display[s] congressional intent to create new rights." Id. at 289, 121 S. Ct. at 1521. And Congress must "display[] an intent to create not just a private right but also a private remedy." Id. at 286, 121 S. Ct. at 1519.

There is no "rights-creating" language in § 3332(a). See id. at 288, 121 S. Ct. at 1521. Even if the language in § 3332(a) arguably implies some potential

---

[5] We need not remand to allow Morales to formally amend his petition to allege that Coffey acted on behalf of Morales because any amendment would be futile. See Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed . . . .").

11

duty on the part of the U.S. Attorney to present information to a special grand jury, that is not a duty owed to Morales individually. See id. at 289, 121 S. Ct. at 1521 ("Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." (quotation marks omitted)).[6]

Even if Morales could show that § 3332(a) creates a private right of action in some party under some set of facts, that would not confer standing on Morales in this particular case. The Article III requirements of standing persist, and Morales has not sufficiently alleged a cognizable injury. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992). The U.S. Attorney's denial of a request to present information does not invade any "concrete" and "particularized" interest of Morales or affect Morales any differently than it affects everyone else. The injury prong of standing analysis is designed to ensure that

---

[6] Morales, leaning heavily on a non-binding 1985 district court decision, In re Grand Jury Application, 617 F. Supp. 199 (S.D.N.Y. 1985), argues that the state of the law in 1970 regarding implied private rights of action and the specific legislative history of § 3332(a) show that Congress intended a private remedy. However, all other courts to decide this question as to § 3332(a) appear to have held there is no such private right of action under these facts. See Stimac v. Wieking, 785 F. Supp. 2d 847, 851-52 (N.D. Cal. 2011) ("I am unconvinced that the right to force a prosecutor to bring evidence before the grand jury is as absolute as the court concluded in In re Grand Jury Application."); Hantzis v. Grantland, 772 F. Supp. 2d 1, 3 (D.D.C. 2009) ("no private right of action is available" under § 3332(a)); Lundy v. United States, No. 07-1008, 2007 WL 4556702 at *2 (C.D. Ill. Dec. 21, 2007) corrected on other grounds, No. 07-1008, 2008 WL 2510172 (C.D. Ill. June 19, 2008) ("§ 3332(a) does not confer a private right of action"); Bryant v. Fienberg, No. 206-CV-13849, 2006 WL 2924744 at *2 (E.D. Mich. Oct. 10, 2006) (the "plaintiff does not have a private cause of action under 18 U.S.C. § 3332(a), the Special Grand Jury statute").

such generalized grievances remain non-justiciable. Id. at 575, 112 S. Ct. at 2144. A statutory violation alone will not suffice to create standing.

And although Morales has an interest in the prosecution of those responsible for his brother's death, a private citizen's interest in the U.S. Attorney's criminal prosecution of another person is not a judicially cognizable interest for standing purposes. Linda R.S., 410 U.S. at 619, 93 S. Ct. at 1149 (concluding that "a citizen lacks standing to contest . . . the prosecuting authority['s policies] when he himself is neither prosecuted nor threatened with prosecution" and "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another" (citations omitted)).

Likewise, Morales's demand that the U.S. Attorney present certain information to a grand jury in furtherance of a potential prosecution of the Castro brothers is nothing more than a demand that the U.S. Attorney prosecute them, which is a generally available grievance assertable by any citizen and not a concrete and particularized injury to Morales.

We need not proceed beyond the injury prong of the Article III standing requirements. Because Morales fails to allege a sufficiently concrete, particularized injury, he is without standing to bring this mandamus petition, and we lack subject-matter jurisdiction to adjudicate his claim. Moreover, though we decline to separately address the issue of constitutional ripeness, we note that

13

"[t]he ripeness problem in this case is much the same as standing." See Elend, 471 F.3d at 1210.  The absence of concrete injury undercuts Morales's claim that a clear, sufficiently mature, and sufficiently adverse issue was before the district court.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of Morales's petition for a writ of mandamus.

**AFFIRMED.**